HARLAN E. SANDERS, Plaintiff-Appellee, *v.* THE BOARD OF TRUSTEES OF THE CITY OF SPRINGFIELD POLICE PENSION FUND, Defendant-Appellant.

Fourth District   No. 4—82—0256

Opinion filed February 3, 1983.—Rehearing denied March 2, 1983.

Edward G. Coleman, of Springfield, for appellant.

Steve W. Berg, of Calandrino, Logan & Berg, P.C., of Springfield, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

In this administrative review action, defendant appeals from an order of the circuit court of Sangamon County which reversed defendant's denial of plaintiff's application for membership in the Springfield Police Pension Fund.

Plaintiff began work as a Springfield police officer on September 4, 1979, and applied for membership in the Springfield Police Pension Fund (Fund) on the same date. Relying on the premise that Dr. Philip J. Haggerty, examining physician for the Board of Trustees of the Fund (Board), had found plaintiff physically unfit to perform the duties of a police officer, the Board rejected plaintiff's application on November 26, 1979. The plaintiff was subsequently granted a hearing in regard to the denial of his application. Following this hearing, the Board reaffirmed its denial on July 9, 1980.

On August 12, 1980, plaintiff filed a complaint for administrative review in the Sangamon County circuit court, seeking reversal of the Board's denial of his membership application. Following a hearing on March 20, 1981, the court reversed the Board's decision and remanded the cause to the Board for a new hearing. Pursuant to the circuit court decision, a second hearing was held on December 23, 1981. The Board introduced into evidence a copy of a letter from Dr. Haggerty concerning the results of a physical examination of plaintiff which Haggerty performed on December 21, 1981. In this letter, Haggerty stated that plaintiff was afflicted with the following medical problems and physical abnormalities: hypertension, acute dental caries, active acne of the thorax, numerous epidermoid cysts on the scrotum and an elevated uric acid level (suggestive of a diagnosis of gout). His blood pressure at the time of the examination was $110/70$. Haggerty also noted that plaintiff sustained a broken right foot in 1979 and a broken right elbow in 1981. Haggerty concluded that the large amount of medication which plaintiff was taking kept his hypertension under good control, but that he was uncertain whether the present good control of plaintiff's blood pressure through medication significantly affected the long-term risks of hypertension. The plaintiff's sole evidence consisted of a handwritten note on one of Dr. Haggerty's prescription forms which reads in its entirety:

"Harlan Sanders                    12-23-81
    This man is physically and mentally fit to perform the duties of
    a policeman at this present time."

The note is not signed.

During the course of the hearing, members of the Board expressed concern that because of plaintiff's condition, he could become "dis-

abled" and thus eligible for disability benefits at the time of his choice by simply not taking the medication for his hypertension. The pension payments which he and his family would receive as a result of his becoming disabled could total a quarter million to a million dollars. At the conclusion of the hearing, the Board voted unanimously to reject plaintiff's application for membership in the Fund.

The plaintiff again appealed the Board's decision to the Sangamon County circuit court. Following a hearing on January 22, 1982, the court reversed the Board's decision and ordered that plaintiff be admitted to membership in the Fund, with his membership to be retroactive to September 4, 1979.

■ Before addressing the substantive issue presented in this case, we must first determine whether we may consider evidence as to plaintiff's physical condition adduced at hearings prior to the December 23, 1981, hearing in evaluating the propriety of the Board's action. The circuit court's docket entry of March 20, 1981, which reversed the Board's decision of July 9, 1980, reads in part:

> "Complaint in Administrative Review comes on for hearing. Arguments heard. The decision of Defendant is reversed and remanded for new hearing. Cause stricken."

(Apparently no written order was entered relative to this decision.) We deem the above docket entry to be the equivalent of an order remanding the cause to the Board for a hearing *de novo*. A hearing *de novo* has the same effect as if no actions whatsoever had been instituted in the matter at issue. It is neither limited by nor dependent upon prior proceedings. (*Local Liquor Control Com. v. Illinois Liquor Control Com.* (1978), 59 Ill. App. 3d 1, 374 N.E.2d 1298.) It follows that an administrative decision rendered at the conclusion of a hearing *de novo* must stand or fall on the basis of the evidence presented at that hearing; evidence produced at prior hearings may not be relied upon to support such a decision. We therefore conclude that the only evidence which we may consider in the disposition of this appeal is that presented at the December 23, 1981, hearing.

The defendant contends that the unsigned note from Dr. Haggerty was not properly admitted into evidence at the hearing held on December 23, 1981. The following colloquy concerning this note occurred at the beginning of the hearing:

> "CHAIRMAN: *** Introduce into evidence a letter from Dr. Haggerty on Harlan Sanders ***.
>
> MR. COLEMAN [attorney for the Board]: Mr. President, I'll hand you Dr. Haggerty's—
>
> CHAIRMAN: I've got a copy here.

MR. COLEMAN: —letter and pass the matter back to the Board. This matter was referred back to the Pension Board for reconsideration of Mr. Sanders' application to join the Pension Fund. That's the matter currently before the Board at this time.

MR. BERG: I do have—if that's all the evidence you have to introduce, Mr. Coleman, I have a document from Dr. Haggerty that I'd like to have marked as Petitioner's Exhibit No. 1.

MR. COLEMAN: Have you seen this?

CHAIRMAN: Huh-uh."

No objections were made to the introduction of this note into evidence. This fact, coupled with the discussion before and after plaintiff's request that the note be numbered as an exhibit, establishes that both sides regarded this note as competent evidence for purposes of the decision on plaintiff's application for membership in the Fund. Therefore, we deem this note to have been admitted into evidence at the hearing.

We now turn to the merits of the controversy before us. The principal issue in this case, as in all administrative review actions, is whether the decision of the administrative agency is contrary to the manifest weight of the evidence. In this particular case, a subsidiary question subsumed under the manifest weight of the evidence issue is the extent to which statements of examining physicians, to the effect that applicants for membership in police pension funds are fit or unfit to perform the duties of policemen, are binding on the boards of trustees of such funds in acting upon membership applications.

Our analysis of this matter must begin with section 3—106 of the Illinois Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 3—106) which sets out the eligibility requirements for membership in the police pension funds which all cities, villages and incorporated towns with populations of between 5,000 and 500,000 are required to maintain. The requirement with which we are here concerned is that in order to be entitled to membership in such a fund an officer must be "found upon examination of a duly licensed physician or physicians selected by the Board [of trustees of the pension fund] to be physically and mentally fit to perform the duties of a policeman." We have not discovered any Illinois cases which interpret the above statutory provision or which deal with the circumstances under which a police officer may properly be denied membership in a police pension fund.

There are, however, two cases interpreting a section of the Illinois Pension Code relating to firemen which is substantially similar to the section regarding police pension funds at issue here. The relevant section of the Code relating to firemen provides that in order for a firefighter to be eligible for membership in a firemen's pension fund he

must, *inter alia*, "[b]e found upon a medical examination by a duly licensed physician selected by the Board [of trustees of the firemen's pension fund] to be then physically and mentally fit to perform the duties of a fireman." Ill. Rev. Stat. 1981, ch. 108½, par. 4—107(b)(3).

In the first case to interpret the above provision, *Gordan v. Board of Trustees* (1966), 77 Ill. App. 2d 234, 222 N.E.2d 28, the court upheld the denial of plaintiff's application for admission to a firemen's pension fund on the basis of a physician's report which stated that although plaintiff's back was in good condition at the time of the examination, he was more prone to disability than the average individual, since he had a condition which created a tendency toward a weak back. The court stated that the decision as to whether an applicant is physically fit to perform the duties of a fireman rests with the board of trustees of a firemen's pension fund as opposed to the examining physician, and emphasized that such boards have a fiduciary duty to preserve the fund by admitting only physically fit individuals to membership.

In *Esner v. Board of Trustees* (1979), 68 Ill. App. 3d 541, 386 N.E.2d 288, the board of trustees of a firemen's pension fund was confronted with two conflicting letters concerning the physical condition of an applicant for membership. One was from the applicant's personal physician, the other was from the board's examining physician. After detailing the applicant's back problems, the board's doctor stated that he could not recommend the applicant for admission to the fund, while the applicant's physician stated that there was no reason to believe that the applicant's back condition would be troublesome in the future in the applicant's present work. In remanding the cause for the presentation of additional medical evidence, the court stated that the ultimate question in the case was not whether the applicant was *able* to perform and function as a fireman, but whether he was at the time of submitting his application physically and mentally *fit* to perform the duties of a fireman. The dispositive question was whether the applicant's back condition rendered him more prone to disability than the average fireman without the condition.

■ We agree with the conclusion of the *Gordan* court that the question of whether an applicant for membership in a municipal employee's pension fund is physically and mentally fit to perform his job duties is best left to the determination of the board of trustees of the fund. In view of their personal knowledge of the peculiar physical and emotional demands of the policeman's job, the members of the boards of trustees of policemen's pension funds, the majority of whom are either active or retired police officers themselves, are obviously in the best position to determine, on the basis of relevant medical data,

whether applicants for membership are physically and mentally fit to perform the duties of a police officer.

We must emphasize that our review of the propriety of the Board's decision is limited to a determination of whether the decision is contrary to the manifest weight of the evidence presented at the hearing of December 21, 1981. (*Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 234 N.E.2d 339.) That we may have reached a different conclusion on the basis of the evidence presented to the Board is of no consequence, for a court may not substitute its judgment for that of an administrative agency. *Peterson v. Board of Trustees* (1971), 5 Ill. App. 3d 180, 281 N.E.2d 368.

●■■ Dr. Haggerty, in his letter of December 21, 1981, stated that plaintiff's "long standing hypertension" was currently under good control. However, the plaintiff required "a significant amount of medication to maintain this control." Dr. Haggerty was "not certain that good control of blood pressure at this time significantly affects the long-range risks of hypertension." In our opinion this language, taken as a whole, is equivalent to a statement that plaintiff's hypertension renders him more prone to disability than the average policeman. (*Cf. Esner.*) Since the Board could therefore reasonably conclude that plaintiff is more likely than the average police officer to become disabled and thus eligible for the payment of benefits from the Fund, the Board's denial of plaintiff's application for membership in the fund on the ground that he is physically unfit to perform the duties of a police officer is not contrary to the manifest weight of the evidence. This decision instead constitutes a proper exercise of the Board's fiduciary duty to preserve the fund. The unsigned note from Dr. Haggerty dated December 23, 1981, stating that plaintiff is physically fit to perform the duties of a police officer, does not mandate a contrary result, for the content of that note is merely a conclusion based on the medical evidence before the Board. The note does not contain any new or additional medical evidence. We therefore reverse the judgment of the circuit court and remand this cause with directions that the decision of the Board of Trustees of the Springfield Police Pension Fund, denying plaintiff's application for membership in the Fund, be reinstated.

Reversed and remanded with directions.

WEBBER, P.J., and TRAPP, J., concur.