BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF URBANA, Appellant, v. ILLINOIS HUMAN RIGHTS COMMIS-SION *et al.*, Appellees (Joseph C. Tharp, Intervening Appellee).

Fourth District   No. 4—85—0284

Opinion filed March 5, 1986.

James L. Dobrovolny, of Dobrovolny & Souk, of Urbana, and Patrick A.

Murphey, of Davis & Morgan, of Peoria, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Human Rights Commission.

Kevin C. Kaufhold, of Kassly, Bone, Becker, Dix & Tillery, P.C., of Belleville, for appellee Joseph C. Tharp.

JUSTICE SPITZ delivered the opinion of the court:

Joseph C. Tharp applied to participate in the police pension fund of the city of Urbana. Tharp's application was denied by the board of trustees (board) of the police pension fund (fund) of the city of Urbana. Instead of appealing this denial, Tharp filed a charge of discrimination with the Illinois Department of Human Rights against the board. The Department issued a complaint against the board with the Illinois Human Rights Commission. Alfred G. Burton was assigned as the administrative law judge to hear the complaint. The board moved to dismiss the complaint, and this motion was denied. Subsequently, the board instituted the present action, seeking an order of prohibition to prevent Burton and the Commission from proceeding on the discrimination complaint. A temporary order of prohibition was granted; however, the circuit court subsequently dissolved said order and dismissed the board's complaint.

We reverse.

On or about September 22, 1983, Tharp applied to become a participant in the fund. At this time, Tharp had applied for a position as a policeman for the city of Urbana, but he had not been appointed to said position. Tharp's application to participate in the fund was denied by a unanimous vote of the board at the regular board meeting on October 11, 1983, on the basis of the medical evidence presented with the application. Tharp has the medical condition "diabetes melitis," and he is insulin dependent. On January 23, 1984, Tharp was appointed to the position of policeman for the city of Urbana. The board then served Tharp with a notice of hearing informing Tharp that a "final hearing" on his application to become a participant in the fund would be held.

Tharp appeared at the hearing personally and through counsel. The board rendered a "final" decision dated March 3, 1984, denying Tharp's application and specifically finding that Tharp "is more prone to disability than the average policeman without said condi-

tion, and as such petitioner is physically unfit to perform the duties of a policeman." The board further found that "petitioner could become disabled and thus eligible for disability benefits, at the time of his choice by simply not taking the medication for his condition."

Tharp did not seek judicial review of the board's decision, and the time limitation prescribed for such review has expired. Instead, Tharp filed a charge of discrimination pursuant to the provisions of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1983, ch. 68, par. 1—101 *et seq.*) with the Department. Tharp alleged in his complaint that he had been personally aggrieved by practices prohibited by section 2—102(A) of the Act (Ill. Rev. Stat. 1983, ch. 68, par. 2—102(A)). The Department issued and filed a complaint with the Commission. This complaint alleged as follows: that the board was an "employer" subject to the provisions of the Act; that Tharp is qualified to participate in the fund; that Tharp's handicap is unrelated to his ability to participate in the fund; that the board refused to allow Tharp to participate in the fund; and that the board discriminated against Tharp because of his handicap in violation of section 2—102(A) of the Act by refusing to allow Tharp to participate in the fund because of a handicap unrelated to ability. The complaint requested the following relief: that the board allow Tharp to participate in the fund; that the board pay Tharp a sum equal to any loss of money he may have suffered as a result of the civil rights violations; that Tharp be made whole regarding all benefits and seniority status that would have accrued to him if not for the civil rights violations committed against him by the board; that the board clear Tharp's record of all information regarding this charge; that the board cease and desist from its practice of refusing to allow individuals to participate in the fund because of handicaps unrelated to ability; and that the board pay attorney fees.

Alfred G. Burton was assigned by the Commission as the administrative law judge to hear the complaint. The board filed a motion to dismiss the complaint on the grounds that the Commission did not have jurisdiction over the board and did not have jurisdiction or authority to determine the matters alleged in the complaint. Burton denied the board's motion to dismiss for lack of jurisdiction.

On January 30, 1985, the board filed a verified complaint for order of prohibition in the circuit court of Champaign County. Count I of said complaint, which is the only count to be considered in this action, sought an order of prohibition which would prevent defendants Burton and the Commission from proceeding further upon the complaint filed under the Act. On January 31, 1985, the circuit court

granted the board a temporary order of prohibition, and the matter was scheduled for a hearing on the merits of the prohibition request.

On March 13, 1985, the circuit court of the Sixth Circuit entered an order dissolving the temporary order of prohibition. The order also granted defendant's oral motion to dismiss the board's complaint, stating that "said count does not and cannot state a cause of action."

Pursuant to the board's motion, on March 27, 1985, the circuit court entered an order pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) holding that "there was no just reason for delaying enforcement or appeal pursuant to Supreme Court Rule 304(a)." Subsequently, the circuit court entered a memorandum opinion, dated April 12, 1985, regarding the order entered March 13, 1985. On April 26, 1985, the board filed a notice of appeal seeking to have the March 13, 1985, order issued by the circuit court reversed, and to have a writ of prohibition entered.

■■ The sole issue raised by this appeal is whether the circuit court erred in ruling that the Commission has jurisdiction and authority to proceed on the discrimination complaint issued by the Department, and in denying the board's request for an order of prohibition.

The requirements which must be met in order for an order of prohibition to be issued are not in dispute. They are as follows:

"First, the action sought to be prohibited must be judicial or quasi-judicial in nature. *** Second, the jurisdiction of the tribunal against whom the writ is sought must be inferior to that of the issuing court. *** Third, the action sought to be prohibited must be either outside the jurisdiction of the tribunal or, if within its jurisdiction, beyond its legitimate authority. *** Fourth, the party seeking the writ must be without any other adequate remedy." *People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 479-80, 410 N.E.2d 854, 857.

All parties agree that the first two requirements stated above have been met. Additionally, none of the briefs submitted by the parties challenge the determination that the fourth requirement stated above has been met. Therefore the issue in this case is whether or not the board has satisfied the third requirement for the issuance of an order of prohibition.

The third requirement, as stated above, is really a two-part test. The first inquiry is whether or not the tribunal against which the order of prohibition is sought has subject-matter jurisdiction. As stated

in the circuit court's memorandum opinion, "[t]he Commission is clearly given subject-matter jurisdiction concerning claims of unlawful discrimination by employers because of physical handicap with respect to conditions of employment." (Ill. Rev. Stat. 1983, ch. 68, pars. 1—102(A), 1—103(D), 1—103(I), 2—102(A), 7—101(B).) The complaint filed by Tharp with the Commission clearly sets forth such a claim. Thus the issue is further narrowed to a consideration of whether or not the second element of the third requirement for the issuance of an order of prohibition, as stated above, has been met. The narrow issue thus becomes whether or not the Commission has the legitimate authority to proceed on Tharp's discrimination complaint. As stated by the Illinois Supreme Court in *People ex rel. Modern Woodmen of America v. Circuit Court of Washington County* (1931), 347 Ill. 34, 179 N.E. 441:

> "[The remedy of prohibition] may be invoked to prohibit the inferior tribunal from assuming jurisdiction in a matter over which it has no control and also from going beyond its legitimate powers in a matter over which it has jurisdiction." 347 Ill. 34, 39-40, 179 N.E. 441, 443.

On appeal, plaintiff asserts two main arguments for the proposition that the Commission would be acting beyond its legitimate authority in proceeding on Tharp's discrimination complaint. The first argument is that the board has been vested with exclusive authority to determine an applicant's eligibility to participate in the fund by the legislature. The second argument advanced by plaintiff in this regard is that the board's determination that Tharp does not qualify to participate in the fund is *res judicata*, and therefore it cannot be relitigated before the Commission.

■■ ■ The fund is established and maintained pursuant to section 3—101 of the Illinois Pension Code (Code) (Ill. Rev. Stat., 1984 Supp., ch. 108½, sec. 3—101), which reads as follows:

> "In each municipality, as defined in Section 3—103, the city council or the board of trustees, as the case may be, shall establish and administer a police pension fund, as prescribed in this Article, for the benefit of its police officers and of their surviving spouses, children, and certain other dependents."

Section 3—132 of the Code provides that, pursuant to section 3—131, the board has the power and duty "[t]o control and manage, exclusively, the pension fund ***." (Ill. Rev. Stat., 1984 Supp., ch. 108½, par. 3—132.) Plaintiff validly cites the case of *People ex rel. No. 3 J. & E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 410 N.E.2d 854, for the proposition that an order of prohibition is availa-

ble to prevent action by an agency with regard to a topic or subject matter regarding which the legislature has vested exclusive authority in another tribunal.

Section 3—148 of the Code provides that:

"The provisions of the Administrative Review Law, and all amendments and modifications thereof and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article." Ill. Rev. Stat. 1983, ch. 108½, par. 3—148.

In *Mason v. Board of Trustees* (1984), 125 Ill. App. 3d 614, 617, 466 N.E.2d 365, 367-68, the court stated:

"The Administrative Review Law governs every action seeking a judicial review of a final decision of any administrative agency 'where the Act creating or conferring power in such agency, by express reference ***' adopts it provisions. (Ill. Rev. Stat. 1983, ch. 110, par. 3—102.) Where it is expressly adopted, the Administrative Review Law is the exclusive method of review. (*People ex rel. Chicago & North Western Ry. Co. v. Hulman* (1964), 31 Ill. 2d 166, 201 N.E.2d 103.)"

Section 8—111(D) of the Illinois Human Rights Act provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." Ill. Rev. Stat. 1983, ch. 68, par. 8—111(D).

■ We believe that the Illinois Pension Code implicitly vests the board with jurisdiction over the subject matter of certain alleged civil rights violations. Since the board is vested with exclusive authority to determine eligibility to participate in the fund, and the primary reason for denying an application to participate in the fund is medical problems, the board is necessarily required to consider an applicant's medical condition in determining whether a person is eligible to participate in the fund.

Section 1—101.1 of the Code provides that any person who exercises any discretionary authority over a pension fund is a "fiduciary." (Ill. Rev. Stat. 1983, ch. 108½, par. 1—101.1(a)(iii).) Pursuant to section 3—106(2) of the Code, admission to participate in the fund is limited to persons who are "found upon examination of a duly licensed physician or physicians selected by the board to be physically or mentally fit to perform the duties of a police officer." Ill. Rev. Stat., 1984 Supp., ch. 108½, par. 3—106(2).

Section 1—103 of the Illinois Human Rights Act defines handicap

as being:

"(I) Handicap. \*\*\* a determinable physical or mental characteristic of a person \*\*\* which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic:

(1) \*\*\* is unrelated to the person's ability to perform the duties of a particular job or position; \*\*\*." Ill. Rev. Stat., 1984 Supp., ch. 68, par. 1—103(I)(1).

Pursuant to sections 2—105(B) and 2—101(B)(1)(c) of the Act (Ill. Rev. Stat. 1983, ch. 68, pars. 2—105(B), 2—101(B)(1)(c)), the board is mandated to comply with the provisions of the Act. The board is also bound to comply with the provisions of the Illinois Pension Code. Thus, it is apparent that the board is vested with authority over matters which necessarily involve potential human rights claims; therefore, the provisions of the Illinois Pension Code which grant such authority qualify within the phrase contained in section 8—111(D) of the Illinois Human Rights Act, which reads: "[e]xcept as otherwise provided by law." Consequently, the exclusivity provision contained in section 8—111(D) of the Act does not apply in this case. Therefore, the circuit court erred in not granting the board a writ of prohibition.

■ The cardinal rule of statutory construction is to give effect to the intent of the legislature. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175; *Illinois Power Co. v. Johnson* (1983), 116 Ill. App. 3d 618, 452 N.E.2d 347.) Furthermore, if two statutes which appear to conflict are capable of being construed so that both may stand, the court must so construe them. (*People ex rel. Adamowski v. Metropolitan Sanitary District* (1958), 14 Ill. 2d 271, 150 N.E.2d 361; *In re Estates of Rice* (1979), 77 Ill. App. 3d 641, 396 N.E.2d 298.) We believe that our interpretation of the Illinois Human Rights Act and the Illinois Pension Code, and the interrelation of these two laws, is in accord with these principles of statutory construction.

To rule against the board in this case would effectively divest the board of one of its fundamental purposes, *i.e.*, the determination of eligibility to participate in the fund. We believe that the board is in the best position to determine whether a particular handicap is related to an applicant's ability to perform the duties of a policeman. As this court stated in *Sanders v. Board of Trustees* (1983), 112 Ill. App. 3d 1087, 445 N.E.2d 501:

"\*\*\* the question of whether an applicant for membership in a municipal employee's pension fund is physically and mentally

fit to perform his job duties is best left to the determination of the board of trustees of the fund. In view of their personal knowledge of the peculiar physical and emotional demands of the policeman's job, the members of the boards of trustees of policemen's pension funds, the majority of whom are either active or retired police officers themselves, are obviously in the best position to determine, on the basis of relevant medical data, whether applicants for membership are physically and mentally fit to perform the duties of a police officer." (112 Ill. App. 3d 1087, 1091-92, 445 N.E.2d 501, 505.)

We do not believe that the legislature intended to strip the board of its right and duty to determine eligibility to participate in the fund when enacting the Illinois Human Rights Act.

In reaching our decision, we have carefully considered the recent supreme court opinion in *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 485 N.E.2d 312. In *Mein*, the supreme court stated:

"The legislature has specifically provided through section 8—111(D) of the present act, which is set out above, that courts have no jurisdiction to hear independent actions for civil rights violations. It is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations. *** Debates on Senate Bill 1377, which became the Human Rights Act, confirm that the legislature intended by the Act to avoid direct access to the courts for redress of civil rights violations." (109 Ill. 2d 1, 7, 485 N.E.2d 312, 315.)

We have determined that the broad statement regarding the Act being the exclusive source for redress for human rights violations set forth in *Mein* is not applicable here. We believe that the supreme court in *Mein* was simply stating that a person cannot bring an original action grounded on a violation of the Illinois Human Rights Act in the circuit court. We read *Mein* as standing for the proposition that the Act precludes direct access to the circuit courts for redress of civil rights violations; however, we do not believe that *Mein* is controlling in this case, where another law directs another body to make a determination which necessarily calls into play the subject matter of "human rights."

■ The Illinois Supreme Court has stated that the precedential scope of a decision is limited to the facts before that court. (*People v. Palmer* (1984), 104 Ill. 2d 340, 472 N.E.2d 795; see also *People v. Johnson* (1983), 113 Ill. App. 3d 367, 447 N.E.2d 502.) Furthermore,

this court has stated that it will not be bound by *dicta*, although it will be considered as persuasive. (*Harms v. Sprague* (1983), 119 Ill. App. 3d 503, 456 N.E.2d 976, *aff'd* (1984), 105 Ill. 2d 215, 473 N.E.2d 930.) General expressions in a court's opinion which go beyond what is necessary to decide a case are entitled to respect; however, such expressions are not binding in a subsequent suit. *United States v. Zuskar* (7th Cir. 1956), 237 F.2d 528, *cert. denied* (1957), 352 U.S. 1004, 1 L. Ed. 2d 549, 77 S. Ct. 564.

When read in its proper context, it is clear that the supreme court was only referring to cases where a plaintiff attempts to gain direct access to the circuit court by bringing an original action alleging a human rights violation. The facts in this case are distinguishable from the situation present in *Mein*. The precise holding in *Mein* is that a litigant is precluded by the Illinois Human Rights Act from bringing an independent action for an alleged civil rights violation by means of direct access to the circuit court. The supreme court stated in *Mein* that "[i]t is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations ***"; this is a general expression which goes beyond what was necessary to decide the case. For this reason, we consider this statement in *Mein* to be *dicta* which should not be binding on this court in the instant case.

Since we have determined that the Illinois Pension Code gives the board exclusive authority over Tharp's eligibility to participate in the fund, we do not need to decide whether the doctrine of *res judicata* should operate to bar the Commission from proceeding on Tharp's claim.

For all of the foregoing reasons, the decision of the circuit court is hereby reversed. This case is hereby remanded to the circuit court with directions to enter an order of prohibition to bar the Human Rights Commission from proceeding on Tharp's civil rights complaint.

Reversed and remanded.

McCULLOUGH, P.J., and MORTHLAND, J., concur.