DANIEL NELSON, Appellant, v. BOARD OF TRUSTEES OF THE PO-
LICE PENSION FUND OF THE CITY OF SPRINGFIELD, Appellee.

Fourth District No. 4—85—0448

Opinion filed March 5, 1986.

Timothy J. Londrigan, of Londrigan & Londrigan, of Springfield, for appellant.

Edward G. Coleman, P.C., of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The Board of Trustees (board) of the Police Pension Fund (fund) of the city of Springfield denied the plaintiff, Daniel Nelson, admission into the pension fund. The plaintiff filed suit for administrative review (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*), but the circuit court of Sangamon County affirmed the board's decision. On appeal, the plaintiff contends the board violated his due process rights and the public policy of this State by rejecting his application for admission into the fund without granting him a hearing.

The plaintiff applied for an appointment as a patrolman with the Springfield police department. On December 7, 1983, Dr. Lowell Brown examined the plaintiff on behalf of the Springfield civil service commission. Dr. Brown found the plaintiff was "acceptable in all respects except L.S. spine back derangement may lead to disability." Dr. Erwin Janzen examined the plaintiff's X rays and found he had spondylolithesis. At the request of the civil service commission, Dr. Phillip Haggerty conducted a limited examination of the plaintiff on January 16, 1985. He found the plaintiff had mild spondylolithesis. In his report, Dr. Haggerty stated that at the plaintiff's age, with no previous history of back pain, the risk of disability was statistically the same as other persons that age without spondylolithesis. Dr. Haggerty recommended that the plaintiff be hired as a police officer. On February 20, the plaintiff was appointed to the police department and

applied for admission into the fund.

On February 22, Dr. Haggerty again examined the plaintiff. His diagnosis was consistent with his earlier finding. He found the plaintiff to be qualified for acceptance into the fund. On May 7, Dr. William Schroeder examined the plaintiff at the board's request. He found the plaintiff's condition was "a very stable situation that *probably* would never cause any problems." (Emphasis added.) He also stated:

> "Statistically speaking, there is no higher incidence of back problems in people with *** spondylolithesis than there is in the general population; however, one would have to accept the fact that this is indeed a defect which is physiological and certainly may indeed lead to some problems somewhere down the line."

Schroeder recommended the plaintiff be accepted with a waiver that he would not receive any compensation for any disability stemming from his back condition. In a letter to the board, Dr. Schroeder stated:

> "Certainly it would seem to me that this young man, who is well qualified to be a policeman and certainly has an excellent future or a career as the same, should be allowed to do so. If indeed he is unable to participate in the pension plan because of this deformity, I think that you have two opportunities: (1) you can include him in the pension plan with a waiver, or (2) you can let him continue to function without including him in the pension plan. Certainly the fact that he has a pre-existing deformity should in no way reflect upon his activities."

On June 4, 1984, the board met to consider the plaintiff's application. The board had before it the reports of Dr. Brown and Dr. Janzen, both of Dr. Haggerty's reports, and a letter and report by Dr. Schroeder. The board decided to reject the plaintiff because he posed too high a risk. On July 10, the plaintiff filed suit for administrative review. In his amended complaint, the plaintiff alleged Dr. Paul DiMartino, an expert on the condition of spondylolithesis, had examined him on January 6 and concluded his condition did not cause him any disability or limitation in activities. The plaintiff had never requested the board to consider Dr. DiMartino's findings, although he had the information long before the board's decision. The plaintiff also filed another letter from Dr. Schroeder, dated February 12, 1985. Schroeder indicated the board had misinterpreted his previous report. Schroeder stated the plaintiff was qualified to be a member of the fund. The board moved to strike and expunge the findings of Dr. Di-

Martino and the second letter from Dr. Schroeder. The court granted the board's motion and later affirmed the board's decision.

■■ In his brief, the plaintiff again refers to Dr. DiMartino's findings and Dr. Schroeder's second letter. The board has moved to have this portion of the plaintiff's brief stricken. Section 3—110 of the Code of Civil Procedure provides that a court on review shall not hear any new or additional evidence in support of or in opposition to any decision of an administrative agency. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Thus, a court sitting in administrative review is expressly forbidden to go outside the record. (*Pisano v. Giordano* (1982), 106 Ill. App. 3d 138, 435 N.E.2d 899.) We, therefore, grant the board's motion.

■■ Section 3—106 of the Illinois Pension Code sets forth requirements for eligibility:

"Any person who: (a) is heretofore or hereafter appointed to the police force of a police department and sworn and commissioned to perform police duties; and (b) is found upon examination of a duly licensed physician or physicians selected by the Board to be physically and mentally fit to perform the duties of a policeman; and (c) within 3 months after receiving his first appointment, and if reappointed, within 3 months thereafter, makes written application to the Board to come under the provisions of this Article." (Ill. Rev. Stat. 1983, ch. 108½, par. 3—106.)

Due to their personal knowledge of the peculiar physical and emotional demands of being a policeman, the members of the board, not the physicians selected by the board, determine whether an applicant is qualified for membership. (*Sanders v. Board of Trustees* (1983), 112 Ill. App. 3d 1087, 445 N.E.2d 501.) The transcript of the board's meeting demonstrates the board conscientiously made its decision after considering all of the relevant medical evidence. Findings of an administrative agency are deemed *prima facie* true and correct, and they may be set aside only if contrary to the manifest weight of the evidence. *Bruce v. Department of Registration and Education* (1963), 26 Ill. 2d 612, 187 N.E.2d 711.

The plaintiff does not question the board's authority to determine eligibility. Instead, he contends the board misinterpreted Dr. Schroeder's report to mean that the plaintiff could be accepted into the fund only with a waiver. He maintains the board should have given him an opportunity to present his evidence and to cross-examine Dr. Schroeder as well as the other physicians. Section 3-106 does not require the board to hold a hearing prior to determining whether

an applicant is qualified. The plaintiff, however, argues the board must hold a hearing to comport with the requirements of due process.

The leading case on procedural due process is *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701. In *Roth*, the Supreme Court held the requirements of procedural due process apply only to the deprivation of interests encompassed by the fourteenth amendment's protection of property and liberty. The "protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (408 U.S. 564, 576, 33 L. Ed. 2d 548, 560, 92 S. Ct. 2701, 2708.) Roth stated:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.)

Property interests stem not from the constitution, but from an independent source, such as State law, "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.

■ The plaintiff insists he had a property interest as a member of the fund. He seeks to portray the situation as one in which he became a member of the fund and was subsequently expelled. The board, however, denied the plaintiff's initial application for admission into the fund. The board concludes the plaintiff did not have an "already acquired" interest in the fund. We agree. Section 5 of article XIII of the Illinois Constitution of 1970 gave members of pension funds enforceable contractual rights. (Ill. Const. 1970, art. XIII, sec. 5.) Because the plaintiff never became a member of the fund, he never obtained any protectable property interest. At most, he had a unilateral expectation that he would become a member of the fund. " '[T]here is a human difference between losing what one has and not getting what one wants.' " *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 10, 60 L. Ed. 2d 668, 677, 99 S. Ct. 2100, 2105, quoting Friendly, 123 U. Pa. L. Rev. 1267, 1296 (1975).

■ The plaintiff asserts the board has denied an officer admission into the fund on only two prior occasions and has both times granted the officer a hearing. The plaintiff argues that he and the board had an "understanding," as that term is used in *Roth*, that he too would be granted a hearing. The board maintains it has denied many applications and has held a hearing only when the officer specifically re-

quests one. The Supreme Court has stated that categories of substance and procedure are distinct. Property, therefore, cannot be defined by the procedures used for its deprivation. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 541, 84 L. Ed. 2d 494, 503, 106 S. Ct. 1487, 1493.) The "understanding" must relate to whether the plaintiff had a property right, a legitimate claim of entitlement to a certain benefit, and not to the procedure to be employed. Because we find the plaintiff did not have a property interest, the board could dispense with the hearing regardless of its prior practice.

■ The plaintiff notes a city ordinance requires all police officers to be members of the fund. We upheld this ordinance in *Sanders*. The plaintiff contends the board's decision will not only prevent his participation in the fund but will also result in the loss of his employment. Even if we accept the plaintiff's argument, we cannot conclude that his due process rights have been violated. Nothing in the record indicates the plaintiff had any legitimate claim to continued employment. *Cf. Bishop v. Wood* (1976), 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074; *Sullivan v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 167, 130 N.E.2d 636.

■ The plaintiff contends the board's decision deprived him of his interest in liberty. This is not a case where the plaintiff's opportunity to engage in a common occupation has been completely foreclosed. (*Cf. Willner v. Committee on Character & Fitness* (1963), 373 U.S. 96, 10 L. Ed. 2d 224, 83 S. Ct. 1175; *Goldsmith v. United States Board of Tax Appeals* (1926), 270 U.S. 117, 70 L. Ed. 494, 46 S. Ct. 215.) Nor is the plaintiff's " 'good name, reputation, honor, or integrity' " at stake. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 573, 33 L. Ed. 2d 548, 559, 92 S. Ct. 2701, 2707.) The plaintiff maintains the board has imposed a stigma on him which will foreclose his freedom to take advantage of other employment opportunities. (408 U.S. 564, 573, 33 L. Ed. 2d 548, 559, 92 S. Ct. 2701, 2707.) There can be no such stigma without public disclosure. (*Bishop v. Wood* (1976), 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074; *DeBose v. United States Department of Agriculture* (9th Cir. 1983), 700 F.2d 1262; *In re Selcraig* (5th Cir. 1983), 705 F.2d 789.) The board's decision has only affected the plaintiff's opportunity to join this specific pension fund. He remains as free as before to seek other opportunities. *Cafeteria & Restaurant Workers Union v. McElroy* (1961), 367 U.S. 886, 6 L. Ed. 2d 1230, 81 S. Ct. 1743.

■ The plaintiff argues the board violated the public policy of this State by denying him admission into the fund without a hearing on the basis of a congenital handicap. He cites article I, section 19 of

the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 19), sections 2 and 5 of the White Cane Law (Ill. Rev. Stat. 1983, ch. 23, pars. 3362, 3365), and other statutory provisions (Ill. Rev. Stat. 1983, ch. 29, par. 17; ch. 73, par. 976). The plaintiff failed to raise these constitutional and statutory provisions in the trial court and, therefore, has waived the issue. *Harms v. Sprague* (1984), 105 Ill. 2d 215, 473 N.E.2d 930.

For these reasons, the order of the trial court affirming the board's decision is affirmed.

Affirmed.

MORTHLAND and SPITZ, JJ., concur.