2025 IL App (1st) 240591-U
Order filed: February 6, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-0591

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| SCOTT PETERSEN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 4676 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE OAK | ) | Honorable |
| LAWN POLICE PENSION FUND, | ) | Celia G. Gamrath, |
| | ) | Judge, presiding. |
| Defendant-Appellant. | ) | |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Circuit court's order and administrative decision of pension board are both vacated, and this matter is remanded to pension board for further proceedings, where plaintiff's motion to remand for consideration of newly discovered evidence is granted on appeal.

¶ 2     Defendant-appellant, the Board of Trustees of the Oak Lawn Police Pension Fund (Board), appeals from an order of the circuit court which reversed a decision of the Board denying the application of plaintiff-appellee, Scott Petersen, for a disability pension under either section 3–114.1 or 3-114.2 of the Illinois Pension Code (Pension Code). 40 ILCS 5/3–114.1, 3-114.2 (West 2020). For the following reasons, both the judgment of the circuit court and the Board's decision are vacated, and this matter is remanded to the Board for further proceedings.

¶ 3    Plaintiff began working as a police officer in Oak Lawn in 2011. In 2018 and 2019, plaintiff was involved in two on-duty incidents that are the subject of this appeal.

¶ 4    On July 10, 2018, plaintiff responded to a report of a domestic incident and confronted an uncooperative male subject. When the male resisted arrest, plaintiff applied several "hammer-fist type strikes" with his right arm to subdue the subject. After several of these strikes, plaintiff felt an injury to his right shoulder and temporarily lost use of his arm. Other officers placed the subject under arrest, and plaintiff thereafter sought treatment from a doctor at Excel Medical. Plaintiff did not undergo an x-ray or MRI at that time, and he was diagnosed with a shoulder strain. Plaintiff took no time off work following this incident and simply used over-the-counter pain medications for continuing pain and discomfort.

¶ 5    On January 9, 2019, plaintiff responded to a domestic battery. Upon arrival, plaintiff restrained a suspected offender and attempted to place him under arrest. The suspect resisted and plaintiff reached out with his right arm and "felt the shoulder go again."  The suspect was placed under arrest with the assistance of other officers and plaintiff once again sought treatment at Excel Medical. An MRI was ordered and completed on January 18, 2019. The MRI revealed plaintiff had an "extensive labral tear involving the anterior, superior, and posterior-superior labrum" as well as other tears in his shoulder.

¶ 6    Thereafter, plaintiff sought out and received recommendations and treatment from several doctors for the injury to his shoulder. Plaintiff first consulted with Dr. Sherwin J. Ho, who diagnosed plaintiff with a partial rotator cuff tear and a "SLAP" tear in the right shoulder and recommended physical therapy. After undergoing physical therapy for approximately six weeks, plaintiff elected to undergo surgery on Dr. Ho's recommendation. Plaintiff ultimately chose Dr. Brian Forsythe to perform his surgery, and the surgery was thereafter approved as part of a pending

workers' compensation claim filed by plaintiff. Following a surgery conducted on April 26, 2019, plaintiff completed multiple sessions of physical therapy from May to October 2019. Thereafter, plaintiff performed six weeks of work conditioning to strengthen his shoulder enough to return to work.

¶ 7 On October 1, 2019, plaintiff underwent a functional capacity evaluation ("FCE"). Following the FCE, plaintiff was released by Dr. Forsythe for light-duty, and he returned to work. On November 19, 2019, Dr. Forsythe ordered another MRI after plaintiff complained of continuing problems with his right shoulder. After reviewing the results of the MRI, Dr. Forsythe opined that scar tissue buildup was causing plaintiff's discomfort, a simple, second surgery would be needed to correct this, and there were no other structural issues with his shoulder. Plaintiff then sought to obtain a second opinion as to this diagnosis.

¶ 8 Prior to obtaining such a second opinion, plaintiff was examined by Dr. Paul E. Papierski on February 19, 2020, as part of plaintiff's workers' compensation claim. Dr. Papierski diagnosed plaintiff with shoulder pain and stiffness, and opined that while plaintiff could perform most of his duties, he may have trouble physically subduing a subject and accurately firing his handgun. Dr. Papierski recommended a second surgery to improve plaintiff's range of motion and decrease his shoulder pain. Dr. Papierski also commented that plaintiff would have permanent medical impairment due to his work injuries if he did not undergo a second surgery.

¶ 9 Plaintiff thereafter obtained a second opinion from Dr. Marc Asselmeier on June 4, 2020, who reviewed both MRI scans and recommended surgery for a tear of the labrum and supraspinatus. Plaintiff then returned to Dr. Forsythe to question him about the second MRI and Dr. Asselmeier's findings. After Dr. Forsythe insisted that plaintiff only suffered from scar tissue,

plaintiff thereafter sought another medical opinion from Dr. Steven Chudik and met with Dr. Chudik several times between July 20, 2020, and September 25, 2020.

¶ 10    Dr. Chudik compared the first two MRI scans with a third MRI and noted that the original tear in plaintiff's shoulder was smaller prior to plaintiff's surgery. Dr. Chudik diagnosed plaintiff with an intrasubstance rotator cuff tear and an intrasubstance supraspinatus tear in the right shoulder and recommended a second arthroscopic surgery. Around this same time, plaintiff was also evaluated several times by Dr. Nikhil Verma as part of his workers' compensation claim. After examining plaintiff and reviewing the three MRI scans, Dr. Verma also diagnosed plaintiff with an intrasubstance tear and recommended another surgery. The record reflects that plaintiff originally agreed to a second surgery and began the process of obtaining authorization from the workers' compensation insurer. However, by October 2020, plaintiff began to have doubts about undergoing a second surgery, considering the first one was not successful and only resulted in additional pain and disability. Ultimately, plaintiff decided against having a second surgery.

¶ 11    In October 2020, surveillance video from the municipality's insurance company showed plaintiff riding his motorcycle throughout the south suburbs of Chicago, including shopping for a new motorcycle. Pictures revealed plaintiff mounting the motorcycle and controlling it with both of his shoulders.

¶ 12    Also in October 2020, plaintiff filed an application seeking line-of-duty disability benefits under section 3–114.1 of the Pension Code (Code). 40 ILCS 5/3–114.1 (West 2020). That application was later amended to request, as alternative relief, a non-line-of-duty disability under section 3–114.2 of the Pension Code. 40 ILCS 5/3–114.2 (West 2020). The basis of the application was the injury plaintiff received to his right shoulder due to the incidents on July 10, 2018, and January 9, 2019.

¶ 13    On February 1, 2021, Plaintiff was taken off light duty because he exceeded the maximum 1,040-hour limit of time he could spend on doing light-duty work. It was noted at the time that plaintiff continued to refuse to undergo the approved surgery. Since no position was available within the Oak Lawn police department, plaintiff was ordered to turn in his badge and was prohibited from carrying a firearm.

¶ 14    Following plaintiff's application for disability benefits, the Board selected three doctors to perform an independent medical examination (IME) of plaintiff, pursuant to section 3-115 of the Pension Code. 40 ILCS 5/3–115 (West 2020). The three doctors selected were: Drs. William A. Vitello, Michael I. Peters, and Denis A. Williams.

¶ 15    Dr. Vitello opined that plaintiff could perform all police duty activities except engaging in a physical struggle with an offender given the pain and lack of strength in his right shoulder. Dr. Vitello found the recommendations of arthroscopic rotator cuff repair surgery to be reasonable and appropriate, writing: "It is unclear why Mr. Peterson does not want to undergo further treatment that could allow him to return to his pre-injury level of function and return to full duty as a police officer."

¶ 16    Dr. Peters found that plaintiff is disabled from performing full police duties due to chronic pain and reduced range of motion following arthroscopic right shoulder surgery. Dr. Peters opined plaintiff "has a high potential for improvement based on the degree of supraspinatus tendon tear, his age, and generally good level of fitness."

¶ 17    Dr. Williams found defendant disabled from performing full and unrestricted police duties "until he has the operation." Dr. Williams opined surgery would restore functionality at a high probability level of between 80-90%.

¶ 18    On May 25, 2021, plaintiff was involved in an off-duty altercation in Westchester, Illinois, wherein he interceded in a possible domestic incident, tackled a male subject to the ground, and held him until police arrived. Video of the incident showed plaintiff wrestling the male subject by grabbing him around the upper back and neck with both arms wrestling with the subject and then controlling the male subject by tackling and pinning him on the ground using both of his arms and knees to restrain the male subject until the police arrived.

¶ 19    After the Westchester incident video became available, the Board asked its three IME doctors to review the video and update their opinions if necessary. Neither Drs. Peters nor Williams changed their opinions after viewing the video. However, Dr. Vitello did revise his opinion after noting that plaintiff was clearly able to engage in a physical struggle. Therefore, Dr, Vitello reversed his opinion concerning plaintiff's inability to engage in a physical struggle with an offender and now found that plaintiff was not disabled.

¶ 20    The Board held a hearing on plaintiff's application on September 22, 2021, and January 21, 2022. At the conclusion of the hearing, the Board voted to deny plaintiff both a line-of-duty and a non-duty pension. A final written order was issued by the Board on April 15, 2022.

¶ 21    In that order, the Board first concluded that plaintiff failed to establish that he was disabled. In so ruling, the Board primarily relied upon plaintiff's actions during the Westchester incident and the revised opinion of Dr. Vitello following review of the video of that incident, and plaintiff's personal use of a motorcycle following his injury to his shoulder to conclude that he was not in fact disabled. The Board also found plaintiff's testimony and his reports to doctors of his physical disabilities lacked credibility considering his use of a motorcycle and his actions in the Westchester incident, and testimony purportedly inconsistent with the video, thus rendering unpersuasive many of the opinions of those doctors that plaintiff was disabled. Alternatively, the Board concluded

plaintiff's refusal to obtain further medical treatment was unreasonable and a superseding cause of his continuing disability, because the medical professionals recommended a second surgery and expected a high rate of success for the second surgery due to plaintiff's degree of injury, his age, and his low risk factor profile.

¶ 22    Plaintiff filed a complaint for administrative review in the circuit court on May 16, 2022, seeking reversal of the Board's decision. On March 30, 2023, plaintiff filed a motion for remand pursuant to section 3-111(a)(7) of the Code of Civil Procedure. 735 ILCS 5/3-111(a)(7) (West 2022). Plaintiff sought to remand the matter to the Board for it to consider new medical evidence arising out of plaintiff's still pending workers' compensation claim; specifically, plaintiff asked that the Board evaluate supplemental medical reports from Drs. Asselmeier, Chudik, and Papierski following an updated MRI completed on August 1, 2022. In the motion, plaintiff asserted that:

> "In this case, there is a new MRI which definitively shows post-traumatic arthritis in Petersen's right shoulder. The doctors who examined the new MRI *** previously submitted opinions to the Pension Board during the pension proceedings. The Pension Board relied upon these doctors' opinions in denying Petersen's request for disability benefits based on Petersen's election not to undergo a second surgery to his shoulder. Drs. Asselmeier and Chudik now do not recommend surgery. Dr. Papierski recommends a possible shoulder replacement which is much more invasive than arthroscopic surgery and would prevent Petersen from returning to work."

¶ 23    Copies of these medical reports were attached to the motion. Plaintiff's motion further asserted that "remand is just in this case since Petersen discovered the medical evidence subsequent to the termination of proceedings before the Pension Board. The new evidence is material to the Pension Board's basis for denying Petersen disability benefits for not undergoing a

second surgery to his shoulder." After briefing on the motion to remand, the circuit court ordered the parties to brief the substantive administrative review issues on the merits and delayed ruling on the motion to remand until those briefs were submitted.

¶ 24    On February 21, 2024, the circuit court issued a final order reversing the Board's decision and concluding that plaintiff was entitled to a line-of-duty disability pension. As to the issue of whether plaintiff is disabled, the circuit court held the Board's decision was against the manifest weight of the evidence because: (1) there was no medical evidence that riding a motorcycle was beyond plaintiff's non-duty capabilities, (2) most of the doctors had opined plaintiff was still disabled after viewing the video of the Westchester incident, (3) the Board improperly found that plaintiff's testimony was incredible and inconsistent with video of the Westchester incident, and (4) the Board failed to adequately explain why it relied on the updated opinion of Dr. Vitello over and above the opinions of the other doctors. Regarding the issue of plaintiff's purportedly unreasonable failure to treat his injury, the circuit court found the Board failed to consider and credit plaintiff's reasonable trepidation in getting a second surgery, and his significant efforts to remedy his injury by undergoing the initial, unsuccessful surgery and engaging in extensive physical therapy. Plaintiff's motion to remand was denied as moot considering the circuit court's ruling in plaintiff's favor on the merits.

¶ 25    On March 18, 2024, the Board filed a notice of appeal. The Board's motion to stay the circuit court's judgment pending the outcome of this appeal was granted by the circuit court on May 1, 2024. On October 7, 2024, this court granted plaintiff's motion to cite additional authority.

¶ 26    On appeal, the parties debate the merits of the Board's decision to deny plaintiff's application for pension benefits. In the alternative, plaintiff asserts that if this court is at all inclined to affirm the Board's decision, we should instead remand this matter to the Board for consideration

of the newly discovered evidence outlined it the motion to remand he filed in the circuit court. This motion was appropriately considered to be moot below, after the circuit court reversed the Board's decision and rendered judgment in plaintiff's favor. Nevertheless, for the following reasons we conclude that the motion to remand should now be granted, both the judgment of the circuit court and the Board's decision should be vacated, and this matter remanded to the Board for it to take additional evidence and reconsider plaintiff's application for disability benefits.

¶ 27    Section 3-148 of the Pension Code (40 ILCS 5/3-148 (West 2022)) provides that judicial review of pension board decisions is to be governed by the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2022)). In appeals arising under the Administrative Review Law, it is the administrative agency's decision that is reviewed and not the circuit court's determination. *Swanson v. Board of Trustees of Flossmoor Police Pension Fund*, 2014 IL App (1st) 130561, ¶ 27.

¶ 28    Section 3-114.1(a) of the Pension Code provides, in relevant part, that a police officer shall be entitled to receive a line-of-duty disability pension if he or she is found to be physically or mentally disabled for service in the police department, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty." 40 ILCS 5/3-114.1(a) (West 2020). Section 3-114.2 of the Pension Code provides for a similar, but lower disability pension for a police officer "who becomes disabled as a result of any cause other than the performance of an act of duty." 40 ILCS 5/3-114.2 (West 2020). The term "disability," as used in the Pension Code, "exclude[s] medical conditions [that] can be remedied without significant danger to life or health or extraordinary suffering and when medical opinion indicates that a prescribed remedy offers a reasonable prospect for relief." *Mulack v. Hickory Hills Police Pension Board*, 252 Ill. App. 3d 1063, 1071 (1993).

¶ 29    Thus, a claimant's freedom of choice as to medical care should only be preserved if the claimant's refusal of treatment is within the bounds of reason, and a compensable disability will not be found if a claimant unreasonably refuses necessary medical treatment. *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713, 725 (2004). As such, "if the refusal of treatment rises to the level of a superseding cause of continuing disability, then the Code permits denial of benefits." *Roszak v. Kankakee Firefighters' Pension Board*, 376 Ill. App. 3d 130, 147 (2007). "However, medicine is not an exact science, and if a claimant's refusal of treatment is within the bounds of reason, his freedom of choice should be preserved even though the treatment might mitigate the employer's damages." *Id*.

¶ 30    In denying plaintiff's disability claim, the Board first concluded that plaintiff failed to establish that he was disabled considering the evidence presented and its conclusion that plaintiff lacked credibility. Alternatively, the Board concluded plaintiff's refusal to obtain a second surgery was unreasonable and constituted a superseding cause of any continuing disability. In reviewing these findings, the Administrative Review Law generally provides that our administrative review only extends to the questions of fact and law that are presented by the administrative record and that, consequently, no new or additional evidence outside of that record shall be considered. 735 ILCS 5/3-110 (West 2022).

¶ 31    Nevertheless, the Administrative Review Law does grant the circuit court the authority to remand a matter to an administrative agency "for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it shall appear that such action is just." 735 ILCS 5/3-111(a)(7) (West 2022). In turn, on appeal this court has the power to enter any judgment and make any order that ought to have been given or made by the circuit court, including a remandment. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). "However, no remandment

shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency and that it could not by the exercise of reasonable diligence have been obtained at such proceedings; and that such evidence is material to the issues and is not cumulative." 735 ILCS 5/3-111(a)(7) (West 2022). We find that the newly discovered evidence presented by plaintiff in his motion to remand satisfies these requirements, and therefore this matter should be remanded to the Board for it to take additional evidence and reconsider plaintiff's application for disability benefits.

¶ 32    First, the evidence presented by plaintiff in his motion to remand was in fact discovered subsequent to the termination of the proceedings before the Board. As noted above, the Board held a hearing in this matter on September 22, 2021, and January 21, 2022, and a final written order was issued by the Board on April 15, 2022. The motion and the documents attached thereto reveal that on August 1, 2022, after the Board issued its final written order, a new MRI was performed on plaintiff's right shoulder. Plaintiff's shoulder and the new MRI were subsequently reevaluated by Dr. Chudik on August 15, 2022, by Dr. Asselmeier on August 22, 2022, and Dr. Papierski on September 22, 2022, and reports of those evaluations were attached to the motion to remand.

¶ 33    Second, the new evidence also could not by the exercise of reasonable diligence have been obtained prior to the conclusion of the administrative proceedings before the Board. The motion and the documents attached thereto establish that plaintiff continued to receive treatment and evaluation for his injury due to continued problems with this shoulder and as part of his "pending worker's compensation case regarding the same injuries which were the subject of the disability proceedings." There was simply no possibility that this evidence could have been obtained sooner,

where it resulted from ongoing treatment and evaluation of plaintiff's shoulder and plaintiff's still-pending workers' compensation claim.

¶ 34    Third, this evidence was also material to the issues involved in this matter and was not cumulative to the evidence in the administrative record. As to the extent plaintiff's disability, plaintiff's credibility regarding that disability, and the reasonableness of his refusal to undergo the recommended second surgery, the motion to remand included evidence of a completely new MRI scan and new evaluations by Dr. Chudik, Dr. Asselmeier, and Dr. Papierski. Considering this new evidence, Dr. Chudik now opined:

> "Patient's current condition, symptoms and limitations are the result of the progressive development post-traumatic arthritis and causally related to his original work injury. The new follow-up MRI reveals significant secondary changes of post-traumatic arthritis that was developing and not revealed on the previous MRI. *The new MRI findings reveal he is not a candidate for arthroscopic surgery at this time. The earlier recommended surgery would not have been helpful and more likely than not would have been detrimental.* [His] shoulder pathology is consistent with his symptoms and will prevent him from returning to his previous employment and work demands. His condition is permanent[,] progressive and will require future care including conservative treatment and shoulder arthroplasty [shoulder replacement.] Currently he would benefit from physical therapy." (Emphasis added.)

¶ 35    In turn, Dr. Asselmeier now:

> "Recommended ongoing continued limitations of activity and work. Has had ongoing deterioration and development of posttraumatic arthritis related to his work-related injury. *Quite probably will need further orthopedic management in the future, possibly a right*

*total shoulder replacement.* With his age, clinical exam, and x-rays no surgery is indicated

at this time. *Arthroscopic debridement at this time would at the least be unpredictable and*

*quite possibly contraindicated.*" (Emphasis added.)

¶ 36 And Dr. Papierski, who was asked to conduct another IME in conjunction with the pending

workers' compensation claim, noted that after reevaluating plaintiff and reviewing the new MRI

and notes from Drs. Chudik and Asselmeier "[t]he objective medical evidence is present in the

*most recent MRI* showing osteoarthritis particularly in the posterior inferior glenoid." (Emphasis

added.) Dr. Papierski went on to opine the "Right shoulder surgery is likely to be an eventual

treatment for this individual. It would not be expected to return to full duty after shoulder

replacement surgery. This would be considered causally connected to the initial incidents of July

10, 2018, and January 8, 2019." He also opined that plaintiff's "treatment to date has been

reasonable and necessary."

¶ 37 Clearly, all this newly discovered evidence was highly material and non-cumulative with

respect to the very basis for the Board's final decision: *i.e.*, the extent of plaintiff's disability,

plaintiff's credibility regarding the extent of that disability, and the reasonableness of plaintiff's

refusal to undergo the recommended second surgery. In addition, it has also been recognized that:

"the question of whether an applicant for membership in a municipal employee's pension

fund is physically and mentally fit to perform his job duties is best left to the determination

of the board of trustees of the fund. In view of their personal knowledge of the peculiar

physical and emotional demands of the policeman's job, the members of the boards of

trustees of policemen's pension funds *** are obviously in the best position to determine,

on the basis of relevant medical data, whether applicants for membership are physically

and mentally fit to perform the duties of a police officer." *Sanders v. Board of Trustees of*

*City of Springfield Police Pension Fund*, 112 Ill. App. 3d 1087, 1091 (1983).

We further note that courts are to "liberally construe pension acts to favor the rights of the pensioner." *Vargas v. Town of Cicero Police Pension Fund*, 2022 IL App (1st) 220026, ¶ 64.

¶ 38    Considering the record before us, the nature of and basis for the Board's decision, the nature and extent of the newly discovered evidence attached to the motion to remand, and the significant stakes involved for both parties on appeal, we conclude that pursuant to section 3-111(a)(7) of the Administrative Review Law the most "just" result on appeal is to grant plaintiff's motion to remand to the Board "for the purpose of taking additional evidence." 735 ILCS 5/3-111(a)(7) (West 2022). The Board can then apply its superior and personal knowledge and expertise to the peculiar physical demands of plaintiff's job in light of this newly discovered evidence to determine the extent of plaintiff's disability and the reasonableness of his course of treatment, questions that are best left to the determination of the Board in the first instance. We therefore vacate both the judgment of the circuit court and the Board's final administrative decision, and remand this matter to the Board for the purpose of taking additional evidence and reconsidering plaintiff's application for disability benefits. We express no opinion on what, if any, additional new evidence might need to be introduced by the parties before the Board in order to fully and fairly reconsider the issues discussed herein, leaving that issue to be determined in the new proceedings below. We also express no opinion as to the Board's ultimate decision upon reconsidering plaintiff's application after considering any new evidence.

¶ 39    For the foregoing reasons, the judgment of the circuit court is vacated, the Board's decision is vacated, and this cause is remanded to the Board for further proceedings consistent with our decision.

¶ 40    Circuit court judgment vacated.

¶ 41    Board decision vacated.

¶ 42    Cause remanded to Board with directions.