689 N.E.2d 125 (1997)
293 Ill. App.3d 892
228 Ill.Dec. 253
The CITY OF CHICAGO, Plaintiff-Appellant,
v.
BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Defendant-Appellee.
No. 1-95-1141.
Appellate Court of Illinois, First District, First Division.
July 21, 1997.
Rehearing Denied November 25, 1997.
*126 Susan S. Sher, Corporation Counsel of the City of Chicago (Lawrence Rosenthal, Deputy Corporation Counsel, Benna Ruth Solomon, Chief Assistant Corporation Counsel, Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for Plaintiff-Appellant.
Quinlan & Crisham, Ltd., Chicago (William R. Quinlan, Michael I. Rothstein, James A. Niewiara, Lawrence J. Morrissey, of counsel), for Defendant-Appellee.
Justice BUCKLEY delivered the opinion of the court:
The City of Chicago (the City) brought a declaratory judgment action against the Board of Trustees of the University of Illinois (the Board) seeking a declaration that the Board is required to collect and remit certain city taxes. The Board filed a motion to dismiss the complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619 (West 1994). The circuit court granted the Board's motion, finding (1) the circuit court lacks subject matter jurisdiction because the university is entitled to sovereign immunity, and (2) the City's home rule power does not confer authority to require the Board to collect and remit city taxes. The City now appeals.
The City brought this action seeking a declaration that the Board must collect parking, amusement, and telecommunications taxes and remit those funds to the City. The City's claim arises from three municipal ordinances which the Board maintains cannot be applied to the University.
First, the Parking Lot and Garage Operations Tax Ordinance provides that owners and operators of public parking lots or garages must collect a municipal tax from their customers and remit the tax to the City at the end of each month. Chicago Municipal Code §§ 4-236-020(a), (e) (November 11, 1994). Similarly, the Amusement Tax Ordinance places the same responsibility to collect and remit municipal taxes on owners, managers, and operators of amusements or amusement facilities. Chicago Municipal Code §§ 4-156-010, 4-156-020(A), 4-156-030(A) (November 15, 1995). Finally, the Telecommunications Tax Ordinance requires entities that charge a fee for the transmission of telecommunications to collect and remit city taxes. Chicago Municipal Code §§ 3-70-030(A), 3-70-020(1), (K), 3-70-040(A) (eff. July 1, 1995).
Count I of the City's complaint alleges that the Board owns and operates numerous parking facilities in Chicago. Spaces in these facilities are offered for a fee to the general public.
Count II alleges that the Board owns and operates several facilities in Chicago that host "amusements" as that term is defined in the Amusement Tax Ordinance. See Chicago Municipal Code § 4-156-010 (November 15, 1995). Two examples of these facilities are the UIC Pavilion, where attractions such as rock concerts and sporting events are held, and the Chicago Circle Center, which operates participatory activities such as bowling, tennis, pool, swimming, and ice skating. These events and activities are offered to the general public for a fee.
Finally, count III of the complaint alleges that the Board charges for telecommunications services in Chicago, including telephone calls made and received by students living in university housing.
In each count, the City claims that its municipal ordinances are applicable to the Board. The City has demanded that the Board collect and remit the taxes as required in the ordinances, but the Board has refused.
The City filed this action on July 5, 1994. The complaint seeks an order declaring that the Board is required to collect and remit the parking, amusement, and telecommunications taxes. On September 24, 1994, the Board moved to dismiss the complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619 (West 1994). The motion asserted that the circuit court is without subject matter jurisdiction because the Board is entitled to sovereign immunity. The motion further asserted that the City *127 does not have home rule authority to impose a tax on the university because the university is an instrumentality of the state.
On March 10, 1995, the circuit court entered an order granting the Board's motion to dismiss for both reasons asserted in the motion. On March 30, 1995, the City filed its timely notice of appeal.

A. SOVEREIGN IMMUNITY
The City first claims the circuit court erred in finding that the Board is entitled to sovereign immunity. Sovereign immunity exists in Illinois pursuant only to statute. Ill. Const. 1970, art. XIII § 4. The State Lawsuit Immunity Act provides that "the State of Illinois shall not be made a defendant or party in any court," except as provided in the Illinois Public Labor Relations Act (5 ILCS 315/1 et seq. (West 1994)) and the Illinois Court of Claims Act (705 ILCS 505/1 et seq. (West 1994)). 745 ILCS 5/1 (West 1994). The Public Labor Relations Act regulates labor relations between public employers and employees (5 ILCS 315/1 et seq. (West 1994)) and, therefore, it is not relevant to this case. The Court of Claims Act provides that the Court of Claims shall have exclusive jurisdiction over various actions against the state, including actions founded upon state laws or regulations, actions founded upon contracts entered into with the state, and actions sounding in tort. 705 ILCS 505/8(a), (b), (d) (West 1994).
Illinois case law creates a three-part test for determining whether a defendant is entitled to sovereign immunity. Sovereign immunity exists where (1) the defendant is an arm of the state, (2) the plaintiff's action constitutes a "present claim" with the potential to subject the state to liability, and (3) no exceptions to the application of the doctrine exist. See Healy v. Vaupel, 133 Ill.2d 295, 308, 140 Ill.Dec. 368, 549 N.E.2d 1240 (1990); Ellis v. Board of Governors, 102 Ill.2d 387, 390-91, 80 Ill.Dec. 750, 466 N.E.2d 202 (1984); Senn Park Nursing Center v. Miller, 104 Ill.2d 169, 186-89, 83 Ill.Dec. 609, 470 N.E.2d 1029 (1984); City of Springfield v. Allphin, 74 Ill.2d 117, 124, 23 Ill.Dec. 516, 384 N.E.2d 310 (1978).
The first step in deciding whether a defendant is entitled to sovereign immunity is to determine whether the defendant is an arm of the state. Ellis, 102 Ill.2d at 390-91, 80 Ill.Dec. 750, 466 N.E.2d 202. In Ellis, the Illinois Supreme Court specifically held that "the Board [of Governors of State Colleges and Universities of Illinois] is an arm of the State of Illinois" for purposes of sovereign immunity. Ellis, 102 Ill.2d at 393, 80 Ill.Dec. 750, 466 N.E.2d 202. The court reasoned that numerous facts and statutory provisions characterize the Board as an arm of the State. For example, the Board was created by and operates pursuant to statute (see 110 ILCS 305/1 et seq. (West 1994) (University of Illinois Act)), employees are paid with state funds, and all of the Board's excess revenues are paid to the state treasury. Ellis, 102 Ill.2d at 392, 80 Ill.Dec. 750, 466 N.E.2d 202. Therefore, the Board is an arm of the state for purposes of sovereign immunity.
The next question is whether the City's action constitutes a "present claim" for which the Board could be subject to liability. The City's complaint seeks a declaration that the Board must comply with the City's parking, amusement, and telecommunications tax ordinances. The Illinois Supreme Court has clearly held that a claim for declaratory relief is not a present claim. Senn Park, 104 Ill.2d at 188-89, 83 Ill.Dec. 609, 470 N.E.2d 1029; Allphin, 74 Ill.2d at 124, 23 Ill.Dec. 516, 384 N.E.2d 310.
The Board relies on the Ellis case for its position that the City's complaint in this case is a present claim. In Ellis, a tenured professor at Northeastern Illinois University brought an action against the Board of Governors of State Colleges and Universities alleging that she was forced into early retirement and constructively dismissed because she was denied temporary disability. Ellis, 102 Ill.2d at 390, 80 Ill.Dec. 750, 466 N.E.2d 202. The plaintiff sought money damages and reinstatement. Ellis, 102 Ill.2d at 390, 80 Ill.Dec. 750, 466 N.E.2d 202. The supreme court held that since plaintiff's complaint included a claim for money damages, it constituted a present claim, which would potentially subject the Board to liability. Ellis, 102 Ill.2d at 395, 80 Ill.Dec. 750, 466 N.E.2d *128 202. Therefore, the Board was entitled to sovereign immunity, and the circuit court was without subject matter jurisdiction. Ellis, 102 Ill.2d at 395-96, 80 Ill.Dec. 750, 466 N.E.2d 202.
This case, however, does not involve a claim for money damages. Rather, the City seeks only equitable relief. In Senn Park, the plaintiff nursing home facilities sought a writ of mandamus ordering the Director of the Illinois Department of Revenue to reimburse the nursing homes for certain Medicaid services they provided. Senn Park, 104 Ill.2d at 174, 83 Ill.Dec. 609, 470 N.E.2d 1029. Even though the requested relief would have required the Director to pay plaintiffs with state funds, the court found that the complaint did not state a present claim because it was not a claim for money damages. Therefore, the Director was not entitled to sovereign immunity. Senn Park, 104 Ill.2d at 188-89, 83 Ill.Dec. 609, 470 N.E.2d 1029.
This case is even less in the nature of money damages than Senn Park. Here, the Board is not called upon to use state funds to pay the City. Rather, the complaint alleges that the Board is required to collect taxes from third parties and remit those funds to the City. The Board's contention that this task would entail some administrative expense does not transform the nature of the City's action from a declaratory judgment action into a present claim. In fact, that argument was recently rejected by the Illinois Supreme Court in In re Lawrence M., 172 Ill.2d 523, 527, 219 Ill.Dec. 32, 670 N.E.2d 710 (1996).
Because the City's complaint does not constitute a present claim, the Board is not entitled to sovereign immunity. Even if this were a present claim, the Board would still be without sovereign immunity because an exception exists. The enabling statute that created the Board of Trustees of the University of Illinois states that the Board shall have the power "to sue and be sued, provided that any suit * * * sounding in tort must be filed in the Court of Claims." 110 ILCS 305/1 (West 1994).
The City's complaint in this case is not "sounding in tort." The Board urges this court to ignore the "sue and be sued" language, arguing that no case has yet applied it. However, a court is not at liberty to ignore or depart from the plain language and meaning of a clear and unambiguous statute. Kraft, Inc. v. Edgar, 138 Ill.2d 178, 189, 149 Ill.Dec. 286, 561 N.E.2d 656 (1990). Here, there is no ambiguity; the statute clearly states that the Board can be sued, but tort actions must be brought in the Court of Claims. The Court of Claims Act lists numerous other actions against the State that must be brought in the Court of Claims, including contract claims, claims based on state law, and various other remote claims that are not material to this case. See 705 ILCS 505/8(a), (b), (d) (West 1994).
Nonetheless, the Board asserts that numerous cases have held that the "sue and be sued" language does not allow an action in the Circuit Court. However, all of the cases cited by the City involved tort or contract claims. See Williams v. Medical Center Comm'n, 60 Ill.2d 389, 328 N.E.2d 1 (1975) (tort action); Raymond v. Goetz, 262 Ill. App.3d 597, 200 Ill.Dec. 13, 635 N.E.2d 114 (1994) (breach of contract action); McGuire v. Board of Regents, 71 Ill.App.3d 998, 28 Ill.Dec. 465, 390 N.E.2d 632 (1979) (breach of contract); Liebman v. Board of Governors, 79 Ill.App.3d 89, 34 Ill.Dec. 630, 398 N.E.2d 305 (1979) (breach of contract). Therefore, these actions were required to be brought in the Court of Claims pursuant to the Court of Claims Act, and the reviewing courts correctly found that the "sue and be sued" language did not allow the state to be sued in the circuit court.
The City's complaint in this case, on the other hand, is an equitable claim for declaratory relief. No provision of the University of Illinois Act or the Court of Claims Act requires this type of action to be filed in the Court of Claims. We find that the plain meaning of the "sue and be sued" provision constitutes an exception to the doctrine of sovereign immunity in nontort actions that are not covered in the Court of Claims Act. Since this is a declaratory judgment action, the "sue and be sued" exception applies.
In summary, although the Board is an arm of the state, it is not protected by the doctrine *129 of sovereign immunity in this case because the City's action does not constitute a present claim. Even if it were a present claim, the doctrine still does not apply because the "sue and be sued" language of the University of Illinois Act provides an applicable exception. For these reasons, the Board is not entitled to sovereign immunity.

B. HOME RULE AUTHORITY TO COPEL COMPLIANCE
Since sovereign immunity does not preclude the City's action, we must address the merits of the case. The circuit court found, as an additional ground for dismissal, that the parking and amusement tax ordinances are invalid as applied to the Board because the City's home rule power does not authorize it to compel an arm of the state to collect and remit city taxes. This reasoning does not apply to the telecommunications tax ordinance because, as the Board concedes, the General Assembly has specifically authorized municipalities to require state universities to collect city telecommunications taxes and remit them to the City. 65 ILCS 5/8-11-17(a), (c)(5) (West 1994).
On appeal, the City claims that its home rule power allows it to compel the Board to collect and remit city taxes because no statute specifically prohibits it. Section 6 of the Illinois Constitution provides "[e]xcept as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power * * * to tax." 1970 Ill. Const., art. VII, § 6(a). Home rule units exercise their power concurrently with the state to the extent that the General Assembly does not specifically limit concurrent exercise or declare exclusive exercise. 1970 Ill. Const., art. VII, § 6(i). Also, the constitution provides that the powers of home rule units should be construed liberally. 1970 Ill. Const., art. VII, § 6(m).
The City maintains that no state statute specifically limits concurrent exercise of the power to compel state universities to collect and remit city taxes. This issue was addressed in the Illinois Supreme Court case of Board of Education of School District No. 150 v. City of Peoria, 76 Ill.2d 469, 31 Ill.Dec. 197, 394 N.E.2d 399 (1979). In that case, Peoria, a home rule unit, passed an amusement tax ordinance, quite similar to the one at issue in this case, and a food and alcohol tax ordinance. Both ordinances required the owners and operators of any facility selling amusements, food or alcohol to collect the tax and remit it to the city. A school district and a park district, both arms of the state operating in Peoria, sought a declaratory judgment that the ordinances were invalid as to them. Peoria, 76 Ill.2d at 471-72, 31 Ill.Dec. 197, 394 N.E.2d 399.
The court held that the collection and remittance requirements of the ordinances cannot apply to the school district, but they do apply to the park district. Peoria, 76 Ill.2d at 477-78, 31 Ill.Dec. 197, 394 N.E.2d 399. With respect to the school district, the court reasoned that, pursuant to article X of the Illinois Constitution, "the legislature has enacted a comprehensive scheme for the creation, management and operation of Illinois schools." Peoria, 76 Ill.2d at 476, 31 Ill.Dec. 197, 394 N.E.2d 399. This scheme gives the legislature "plenary power over the Illinois school system." Peoria, 76 Ill.2d at 476, 31 Ill.Dec. 197, 394 N.E.2d 399. Because there is a pervasive statewide interest in education, and the ordinances "impose upon the board of education duties over and above those imposed upon the board by the legislature," the ordinances are invalid as applied to the school district. Peoria, 76 Ill.2d at 477, 31 Ill.Dec. 197, 394 N.E.2d 399.
However, with respect to the park district, the court found that although the legislature has codified certain laws relating to park districts, "it did not thereby manifest an intent to assert an exclusive statewide dominion over parks and park districts." Peoria, 76 Ill.2d at 477, 31 Ill.Dec. 197, 394 N.E.2d 399. Furthermore, the Illinois Municipal Code of 1961 authorized municipalities to establish and maintain parks. Peoria, 76 Ill.2d at 477, 31 Ill.Dec. 197, 394 N.E.2d 399, citing Ill.Rev.Stat.1977, ch. 24, pars. 11-98-1 et seq., 11-99-1 et seq., 11-100-1 et seq. For these reasons, the legislature does not have plenary control over the Illinois park system, and the Peoria tax ordinances were valid as applied *130 to the park district. Peoria, 76 Ill.2d at 477-78, 31 Ill.Dec. 197, 394 N.E.2d 399.
Therefore, a municipality's home rule power does not authorize it to require state educational institutions to collect and remit city taxes because such a requirement would interfere with the state's constitutional mandate to operate a statewide educational system. Ill. Const.1970, art. X, § 1; Peoria, 76 Ill.2d at 476-77, 31 Ill.Dec. 197, 394 N.E.2d 399. The state has "plenary power" over state-operated educational institutions, and any attempt by a home rule municipality to impose burdens on those institutions, in the absence of state approval, is unauthorized.
The City attempts to distinguish Peoria on two grounds, neither of which is persuasive. First, the City maintains that the Peoria court refused to allow the ordinances to be applied to the school district because state law did not expressly grant school districts power to collect and remit city taxes. On the other hand, according to the City, the ordinances were held to apply to the park district because state law did not expressly withhold such power.
Clearly, these contentions are inconsistent. The Peoria court did not require an express grant of authority in one instance and an express withholding of authority in the other instance. The focus of Peoria was on Peoria's power to regulate the school district and the park district, not on the school district and park district's power to collect and remit city taxes. The court ruled that home rule municipalities may not regulate school districts because the state has a "pervasive interest" in education and "plenary power" over the Illinois school system. For the same reasons, the City's ordinances in this case cannot be applied to the Board.
The City also claims that the Board cannot escape the collection and remittance requirements because the taxes only apply to events and activities that are outside the University's "educational mission." However, in Peoria, the ordinances at issue were very similar to those at issue here, and the court was not concerned with the specific subject matter of the taxes. Furthermore, the amusement and parking facilities operated by the University are statutorily authorized University functions. See 110 ILCS 305/1 (West 1994) (University of Illinois Act); 110 ILCS 405/1 (West 1994) (University of Illinois Revenue Bond Financing Act for Auxiliary Facilities).
For the foregoing reasons, we affirm the circuit court's dismissal of the City's amusement tax and parking tax claims in counts I and II. However, because state law specifically allows the City to require the Board to collect and remit municipal telecommunications taxes, the dismissal of count III is reversed, and the case is remanded to the circuit court.
Affirmed in part; reversed and remanded in part.
CAMPBELL, P.J., and GALLAGHER, J., concur.