791 N.E.2d 657 (2003)
339 Ill. App.3d 1074
274 Ill.Dec. 565
Lonnell BREWER, Plaintiff Appellant,
v.
The BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS; and Kerrin Thompson, L. Denise Hendricks, Wallace Hendricks, and Peter Feuille, in Their Official and Individual Capacities, Defendants-Appellees.
No. 4-02-0885.
Appellate Court of Illinois, Fourth District.
June 17, 2003.
*658 Joanna C. Fryer, Chicago, for Lonnell Brewer.
Richard P. Klaus, Heyl, Royster, Voelker & Allen, Urbana, for Board of Trustees of University of Illinois.
Justice APPLETON delivered the opinion of the court:
Plaintiff, Lonnell Brewer, filed a complaint alleging violations of federal antidiscrimination statutes. He named, as defendants, the Board of Trustees (Board) of the University of Illinois and four employees of the Board, in their official and individual capacities.
Pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2000)), defendants moved to dismiss the complaint on the grounds of sovereign immunity and a lack of subject-matter jurisdiction. The circuit court granted the motion. Plaintiff appeals, arguing that (1) Illinois has consented to being sued in circuit court for disability discrimination; (2) section 8-111(C) of the Illinois Human Rights Act (Human Rights *659 Act) (775 ILCS 5/8-111(C) (West 2000)) allows a circuit court to exercise original jurisdiction over claims of discrimination that arise from federal statutes; and (3) the circuit court, rather than the Court of Claims, had subject-matter jurisdiction over his claims.
We disagree with all three of those contentions. We hold that the Board, as an arm of the State of Illinois, has sovereign immunity to claims for damages in circuit court, including claims arising out of federal antidiscrimination statutes. We further hold that the circuit court had no subject-matter jurisdiction over plaintiff's claims, because the claims were essentially "subjects" of alleged "civil rights violations" within the meaning of section 8-111(C) claims over which the Illinois Human Rights Commission (Commission) had exclusive subject-matter jurisdiction. Therefore, we affirm the trial court's judgment.

I. BACKGROUND
In his five-count complaint, plaintiff alleged he was an African-American with a learning disability that "substantially impair[ed] one or more [of his] major life activities[,] including, but not limited to, reading and other tasks relating to cognitive processing." From August 29, 1997, through April 22, 1998, he was employed as a research assistant in the university's personnel services office. Also, from the fall semester of 1997 through June 18, 1998, he was enrolled in the university's master's-degree program in its Institute of Labor and Industrial Relations (Institute). The individual defendants were Kerrin Thompson, special assistant to the director of the personnel services office; L. Denise Hendricks, assistant vice president of human resources, associate vice chancellor for administrative affairs, and director of the personnel services office; Wallace Hendricks, a professor in the Institute; and Peter Feuille, a professor and the Institute's director.
In count I, directed against all the defendants, plaintiff alleged they had violated Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. §§ 2000e through 2000e-17 (2000)) by firing him, and terminating his enrollment in the master's-degree program, because of his race.
In count II, directed against the Board, Thompson, and L. Denise Hendricks, plaintiff alleged they had violated the Americans with Disabilities Act of 1990(ADA) (42 U.S.C. §§ 12111 through 12117 (2000)) by failing to provide him reasonable accommodations in his job as a research assistant.
In count III, directed against all of the individual defendants, he alleged they were liable to him under section 1 of the Civil Rights Act (section 1983) (42 U.S.C. § 1983 (2000)) for treating him less favorably than similarly situated employees and students who were not African-American, thereby depriving him of the equal protection of the laws, in violation of the fourteenth amendment (U.S. Const., amend. XIV), and for discriminating against him because of his learning disability, in violation of the ADA.
In count IV, directed against all of the defendants, he alleged, on information and belief, that the university or the Institute was a "program" (or both of them were "programs") receiving federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964 (Title VI) (42 U.S.C. §§ 2000d through 2000d-4 (2000)) and that defendants had violated Title VI by denying him "the benefits of[,] and continued participation in, the program[] on the basis of his race."
In count V, directed against all of the defendants, he alleged they had unlawfully retaliated against him, firing him and terminating *660 his enrollment in the master's-degree program, because he had complained of their discrimination against him.
In its order granting defendants' motion to dismiss the complaint, the trial court stated: "The dismissal of these claims is jurisdictional in nature and not an adjudication on the merits. The dismissal is without prejudice to any potential claims plaintiff may have in federal court. Plaintiff is prevented from further prosecuting his claims in this court * * *." This appeal followed.

II. ANALYSIS

A. Standard of Review
We review de novo the dismissal of a complaint under section 2-619. Golden Rule Insurance Co. v. Elton, 328 Ill. App.3d 444, 446, 262 Ill.Dec. 649, 766 N.E.2d 269, 271 (2002).

B. Sovereign Immunity
Plaintiff argues that Illinois has consented to being sued in circuit court for violations of the ADA and, therefore, the circuit court erred in dismissing count II. He apparently does not dispute that the Board would have sovereign immunity but for such consent. See City of Chicago v. Board of Trustees of the University of Illinois, 293 Ill.App.3d 897, 901, 228 Ill. Dec. 253, 689 N.E.2d 125, 127 (1997). In support of his argument, he reminds us of our statement in Cooper v. Illinois State University, 331 Ill.App.3d 1094, 1100, 265 Ill.Dec. 358, 772 N.E.2d 396, 400 (2002), that "Illinois has consented to defend itself against employment-discrimination claims."
He also quotes the following dicta from Erickson v. Board of Governors of State Colleges & Universities for Northeastern Illinois University, 207 F.3d 945, 952 (7th Cir.2000):
"[A]lthough states may implement a blanket rule of sovereign immunity, see Alden v. Maine, 527 U.S. 706, [119 S.Ct. 2240, 144 L.Ed.2d 636] (1999), Illinois has not done this. Having opened its courts to claims based on state law, including its own prohibition of disability discrimination by units of state government, see 775 ILCS 5/1-102, []2-101(B)(1)(c) [(West 2000)], Illinois may not exclude claims based on federal law. [Howlett v. Rose, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); Federal Energy Regulatory Comm'n v. Mississippi, 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982) (hereinafter FERC); Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947)]."
Plaintiff acknowledges that in Cooper, 331 Ill.App.3d at 1100, 265 Ill.Dec. 358, 772 N.E.2d at 400, we disagreed with that quotation from Erickson. He asks us to reconsider. We continue to disagree with it.
When we said, in Cooper, that Illinois had consented to defending itself against claims of discrimination in employment, we meant only claims before the Commission, as we were careful to emphasize. Cooper, 331 Ill.App.3d at 1100, 265 Ill.Dec. 358, 772 N.E.2d at 400. Illinois courts' lack of jurisdiction over such claims has critical implications for sovereign immunity. As a matter of pure logic, it is impossible for Illinois to have consented to defending itself against a claim in its courts if Illinois has withheld, from its courts, subject-matter jurisdiction over that type of claim.
The eleventh amendment (U.S. Const., amend. XI) expresses the presupposition that the states would retain their sovereign immunity after the ratification of the United States Constitution. Federal Maritime Comm'n v. South Carolina State Ports Authority, 535 U.S. 743, 753-54, *661 122 S.Ct. 1864, 1871, 152 L.Ed.2d 962, 973 (2002); Alden, 527 U.S. at 713, 119 S.Ct. at 2246-47, 144 L.Ed.2d at 652. The amendment does not define the extent of that immunity so much as confirm the constitutional structure the Framers contemplated (Federal Maritime Comm'n, 535 U.S. at 753-54, 122 S.Ct. at 1871, 152 L.Ed.2d at 973), a structure that reserved to the states "a substantial portion of the [n]ation's primary sovereignty, together with the dignity and essential attributes inhering in that status," including immunity from private suits for damages. Alden, 527 U.S. at 714-15, 119 S.Ct. at 2247, 144 L.Ed.2d at 653-54, citing The Federalist No. 39, at 245 (C. Rossiter ed.1961) (J. Madison). "[T]he [s]upremacy [c]lause enshrines as `the supreme Law of the Land' only those [f]ederal [a]cts that accord with the constitutional design"a design that contemplates the preservation of the states' sovereign immunity. Alden, 527 U.S. at 731, 119 S.Ct. at 2255, 144 L.Ed.2d at 664, quoting U.S. Const., art. VI.
The Supreme Court has squarely held that the eleventh amendment bars suits by private citizens against states for money damages under the ADA. Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 360, 121 S.Ct. 955, 960, 148 L.Ed.2d 866, 874-75 (2001). A state can waive its sovereign immunity by consenting to private suits against itself (Alden, 527 U.S. at 755, 119 S.Ct. at 2267, 144 L.Ed.2d at 679), but the consent must be express and unequivocal (College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 680, 119 S.Ct. 2219, 2228, 144 L.Ed.2d 605, 619 (1999)). As we explained in Cooper, 331 Ill.App.3d at 1097, 265 Ill.Dec. 358, 772 N.E.2d at 398, the Illinois Constitution of 1970 abolished sovereign immunity but allowed the General Assembly to reinstate it. Ill. Const. 1970, art. XIII, § 4. The General Assembly reinstated sovereign immunity by enacting the State Lawsuit Immunity Act (Immunity Act), which provides: "Except as provided in the []Illinois Public Labor Relations Act[] [(5 ILCS 315/1 through 27 (West 2000))], * * * or except as provided in [the Court of Claims Act (705 ILCS 505/1 through 29 (West 2000))], * * * the State of Illinois shall not be made a defendant or party in any court." (Emphasis added.) 745 ILCS 5/1 (West 2000).
It is difficult to understand how one could assert that Illinois has "opened its courts," i.e., its circuit courts, to any claims against itself (let alone claims of disability discrimination) when the Immunity Act plainly states that except as provided in the Illinois Public Relations Act or the Court of Claims Act, Illinois "shall not be made a defendant * * * in any court." 745 ILCS 5/1 (West 2000). Illinois has not clearly waived sovereign immunity; far from it, Illinois has clearly reinstated sovereign immunity, with the two narrow qualifications the Immunity Act specifies. Neither of those qualifications provides plaintiff an entree into circuit court.
Illinois courts have no subject-matter jurisdiction over claims of disability discrimination in employment, except for the limited purpose of judicial review. 775 ILCS 5/7-101.1(A), 8-111(A), (C) (West 2000). Only the Commissionan administrative agency, not a courtcan adjudicate such claims. 775 ILCS 5/8-111(C), 8A-102, 8A-103 (West 2000); Castaneda v. Illinois Human Rights Comm'n, 132 Ill.2d 304, 322-23, 138 Ill.Dec. 270, 547 N.E.2d 437, 445-46 (1989); Faulkner-King v. Wicks, 226 Ill.App.3d 962, 970-71, 168 Ill. Dec. 874, 590 N.E.2d 511, 518 (1992). Contrary to the dicta in Erickson, Illinois has not "opened its courts" to claims of disability discrimination and, therefore, has not consented to adjudicate, in its own *662 courts, similar claims premised on federal law.

C. Section 8-111(C) of the Human Rights Act
Plaintiff's actions in this case are all "subject[s] of * * * alleged civil rights violation[s]." 775 ILCS 5/8-111(C) (West 2000). The university is an "employer" within the meaning of section 2-101(B)(1)(c) of the Human Rights Act. 775 ILCS 5/2-101(B)(1)(c) (West 2000). It is a civil rights violation for an "employer" to discriminate against an employee on the basis of race or handicap. 775 ILCS 5/2-102(A), 1-103(Q) (West 2000). Discrimination on the basis of handicap includes a failure to make reasonable accommodation. See 56 Ill. Adm.Code § 2500.40 (Conway Greene CD-ROM March 2002); In re Request for Review by Cyrex, Ill. Hum. Rts. Comm'n Op.1995CH2945 (June 20, 1997) (1997 ILHUM LEXIS 472, at *2). It is also a civil rights violation to "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination." 775 ILCS 5/6-101(A) (West 2000).
Section 8-111(C) states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C) (West 2000). Relying on the initial limiting phrase ("[e]xcept as otherwise provided by law"), plaintiff argues that the trial court had subject-matter jurisdiction over his claims under Title VII and section 1983 because federal law "otherwise provided" that Illinois courts had jurisdiction over such claims. Even if we agreed with plaintiff's interpretation of section 8-111(C)even if the trial court could exercise jurisdiction over federally created claims of discriminationwe still would affirm, on the ground of sovereign immunity, the dismissal of plaintiff's section 1983 actions against the Board and the individual defendants in their official capacities. See Will v. Michigan Department of State Police, 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 2309-10, 2312, 105 L.Ed.2d 45, 55, 58 (1989).
Besides, we disagree with plaintiff's interpretation of section 8-111(C). Neither Title VII nor section 1983 provides that plaintiffs may sue in state court. Those two statutes, by their terms, provide a right of action in federal court. 42 U.S.C. §§ 2000e-5(f)(3), 1988 (2000). Because of "the presumption of concurrent jurisdiction that lies at the core of our federal system," state courts can exercise concurrent jurisdiction over claims under Title VII and section 1983. Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 826, 110 S.Ct. 1566, 1570, 108 L.Ed.2d 834, 841 (1990); Martinez v. California, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481, 488 n. 7 (1980). We do not think that the mere "presumption of concurrent jurisdiction" implied in our federal system is the sort of legal provision the legislature had in mind in the initial clause of section 8-111(C).
In Board of Trustees of the Police Pension Fund v. Illinois Human Rights Comm'n, 141 Ill.App.3d 447, 454, 95 Ill. Dec. 759, 490 N.E.2d 232, 236 (1986), we gave the words "[e]xcept as otherwise provided by law" a narrow construction. In Urbana, 141 Ill.App.3d at 449, 95 Ill.Dec. 759, 490 N.E.2d at 232, the plaintiff applied to participate in the police pension fund of the City of Urbana. The board of trustees of the pension fund denied his application on the ground that he suffered from diabetes and "`could become disabled[,] and thus eligible for disability benefits, at the time of his choice by simply not taking the medication for his condition.'" *663 Urbana, 141 Ill.App.3d at 450, 95 Ill.Dec. 759, 490 N.E.2d at 233. Instead of seeking judicial review of the board's decision, the plaintiff filed a charge of handicap discrimination with the Illinois Department of Human Rights. Urbana, 141 Ill. App.3d at 450, 95 Ill.Dec. 759, 490 N.E.2d at 233.
Section 3-132 of the Illinois Pension Code (Ill.Rev.Stat., 1984 Supp., ch. 108 1/2, par. 3-132) provided that the board of trustees of the pension fund had the power and duty "`[t]o control and manage, exclusively, the pension fund.'" (Emphasis added.) Urbana, 141 Ill.App.3d at 452, 95 Ill.Dec. 759, 490 N.E.2d at 235. We reasoned: "[I]t is apparent that the board is vested with authority over matters which necessarily involve potential human rights claims; therefore, the provisions of the Illinois Pension Code which grant such authority qualify within the phrase * * * which reads: `[e]xcept as otherwise provided by law.'" Urbana, 141 Ill.App.3d at 454, 95 Ill.Dec. 759, 490 N.E.2d at 235-36, quoting Ill.Rev.Stat.1983, ch. 68, par. 8-111(D) (now 775 ILCS 5/8-111(C) (West 2000)). "[A]nother law [(the Illinois Pension Code)] direct[ed] [the board of trustees of the pension fund] to make a determination which necessarily call[ed] into play the subject matter of `human rights.'" (Emphasis added.) Urbana, 141 Ill. App.3d at 455, 95 Ill.Dec. 759, 490 N.E.2d at 236.
As the Second District pointed out in Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n, 200 Ill.App.3d 151, 158, 146 Ill. Dec. 705, 558 N.E.2d 668, 673 (1990), "the exception to the [Human Rights] Act's exclusivity which was carved out in Urbana has been construed to be a narrow one." To come within the exception, a statute or other legislation must impose upon the tribunal the exclusive duty to decide a matter that necessarily encompasses the subject of a civil rights violation. Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n, 184 Ill.App.3d 339, 347, 133 Ill.Dec. 810, 541 N.E.2d 1248, 1254 (1989). A mere "presumption of concurrent jurisdiction" will not suffice. The supremacy clause requires a state court to enforce a right arising from a federal law only if "`the general jurisdiction conferred by the state law upon a state court embraced otherwise causes of action created by'" the federal statute. Howlett, 496 U.S. at 371 n. 17, 110 S.Ct. at 2440 n. 17, 110 L.Ed.2d at 349 n. 17, quoting Minneapolis & St. Louis R.R. Co. v. Bombolis, 241 U.S. 211, 222, 36 S.Ct. 595, 598, 60 L.Ed. 961, 965 (1916). Thus, a simple invocation of the supremacy clause cannot resolve the question of whether a state court must enforce a federal right; it depends on whether the state court has jurisdiction, under neutral local law, over claims of that type.

D. Discrimination Against Federal Law
Conceding that Erickson and other decisions of the lower federal courts do not bind us (see Cooper, 331 Ill.App.3d at 1100, 265 Ill.Dec. 358, 772 N.E.2d at 400), plaintiff nevertheless contends that three Supreme Court decisions that Erickson cites are controlling, namely, Howlett, Testa, and FERC. We find those Supreme Court decisions to be distinguishable.
In Howlett, 496 U.S. at 358-59, 110 S.Ct. at 2433-34, 110 L.Ed.2d at 342-43, the plaintiff sued a school board and its officials in state court under section 1983. A Florida statute provided that school boards were "subject to suit in circuit court for tort claims `in the same manner and to the same extent as a private individual under like circumstances.'" Howlett, 496 U.S. at 361, 110 S.Ct. at 2435, 110 L.Ed.2d at 343-44, quoting Fla. Stat. *664 § 768.28(5) (1989). Under Florida law, the circuit court would have had jurisdiction over a section 1983 action against a school employee. Howlett, 496 U.S. at 380, 110 S.Ct. at 2445, 110 L.Ed.2d at 356. It also would have had jurisdiction over the school board if the action were based on the state's common law or statutory law. Howlett, 496 U.S. at 380, 110 S.Ct. at 2445, 110 L.Ed.2d at 356. The Supreme Court held that Florida's "simple refusal to take cognizance of the federal cause of action"a cause of action over which Florida courts clearly had jurisdiction under the state's own laws"flatly violate[d] the [s]upremacy [c]lause." Howlett, 496 U.S. at 380-81, 110 S.Ct. at 2445, 110 L.Ed.2d at 356.
For two reasons, Howlett is distinguishable from the present case. First, the school board in Howlett was a local governmental entity, not an arm of the state, and, therefore, under federal law, it did not partake of Florida's sovereign immunity. Howlett, 496 U.S. at 365-66, 110 S.Ct. at 2437, 110 L.Ed.2d at 346. In the present case, the Board is an arm of the State, not a local governmental entity, and has sovereign immunity. Board of Trustees of the University of Illinois, 293 Ill.App.3d at 901, 228 Ill.Dec. 253, 689 N.E.2d at 127.
Second, under Florida's own laws, Florida courts had jurisdiction over section 1983 claims. Howlett, 496 U.S. at 380, 110 S.Ct. at 2445, 110 L.Ed.2d at 356. The Supreme Court explained:
"When a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts, we must act with utmost caution before deciding that it is obligated to entertain the claim. [Citations.] The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the [s]tate create a court competent to hear the case in which the federal claim is presented. The general rule, `bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.' [H. Hart, The Relations Between State and Federal Law, 54 Colum. L.Rev. 489, 508 (1954); citations.] The [s]tates thus have great latitude, to establish the structure and jurisdiction of their own courts." (Emphases added.) Howlett, 496 U.S. at 372, 110 S.Ct. at 2440-41, 110 L.Ed.2d at 350-51.
Illinois courts have no jurisdiction over plaintiff's claims, regardless of whether he couches them in a state statute or federal statute, because they are "inextricably linked" to alleged civil rights violations. See Maksimovic v. Tsogalis, 177 Ill.2d 511, 514, 227 Ill.Dec. 98, 687 N.E.2d 21, 22 (1997); 775 ILCS 5/8-111(C) (West 2000). Federal law must take Illinois courts as it finds them. "Congress can utilize [s]tate courts to enforce [f]ederal rights, but it must do so subject to all conditions which the [s]tate court imposes on other litigants." Faulkner-King, 226 Ill.App.3d at 970, 168 Ill.Dec. 874, 590 N.E.2d at 518. Illinois does not "discriminat[e] against federal causes of action" (Howlett, 496 U.S. at 366, 110 S.Ct. at 2437, 110 L.Ed.2d at 346); its courts do not adjudicate claims of discrimination arising from state law, eitherto the extent those claims are "the subject[s] of * * * alleged civil rights violation[s]." 775 ILCS 5/8-111(C) (West 2000).
In Testa, 330 U.S. at 387, 67 S.Ct. at 811, 91 L.Ed. at 968-69, a federal statute provided that if a seller of goods sold them for more than the maximum allowable price, the buyer could sue the seller in any court having jurisdiction and win a penalty. The Supreme Court of Rhode Island held that the federal statute was a foreign *665 penal statute and therefore Rhode Island's courts did not have to enforce it, even "though their jurisdiction [was] adequate to enforce similar Rhode Island `penal' statutes." (Emphasis added.) Testa, 330 U.S. at 388, 67 S.Ct. at 812, 91 L.Ed. at 969. The United States Supreme Court held: "[T]he Rhode Island courts have jurisdiction adequate and appropriate under established local law to adjudicate this action. Under these circumstances the [s]tate courts are not free to refuse enforcement of petitioners' claim." Testa, 330 U.S. at 394, 67 S.Ct. at 815, 91 L.Ed. at 972. Illinois courts do not have subject-matter jurisdiction "adequate and appropriate," under Illinois law, to adjudicate plaintiff's claims. Therefore, Testa is inapposite.
In FERC, 456 U.S. at 752, 102 S.Ct. at 2133, 72 L.Ed.2d at 542, the appellees, the State of Mississippi and Mississippi Public Service Commission, won a declaratory judgment in federal district court that provisions of the Public Utility Regulatory Policies Act of 1978 (PURPA) (16 U.S.C. §§ 2601 through 2645 (Supp.1980)) were unconstitutional on the ground that they trenched on state sovereignty. The Supreme Court reversed. FERC, 456 U.S. at 745, 102 S.Ct. at 2130, 72 L.Ed.2d at 537. Section 210 of PURPA (16 U.S.C. § 824a-3 (1980)) "appear[ed] to be the most intrusive of PURPA's provisions." FERC, 456 U.S. at 759, 102 S.Ct. at 2137, 72 L.Ed.2d at 546. It provided "that `each [s]tate regulatory authority shall, after notice and opportunity for public hearing, implement such rule (or revised rule)[, prescribed by the FERC,] for each electric utility for which it has ratemaking authority.'" (Emphasis in original.) FERC, 456 U.S. at 759, 102 S.Ct. at 2137, 72 L.Ed.2d at 547, quoting 16 U.S.C. § 824a-3(f)(1) (1980).
The Supreme Court upheld the constitutionality of section 210 of PURPA for the following reason:
"In essence, * * * the statute and the implementing regulations simply require the Mississippi authorities to adjudicate disputes arising under the statute. Dispute resolution of this kind is the very type of activity customarily engaged in by the Mississippi Public Service Commission." (Emphasis added.) FERC, 456 U.S. at 760, 102 S.Ct. at 2137, 72 L.Ed.2d at 547.
Thus, section 210 satisfied the requirements of Testa. FERC, 456 U.S. at 760, 102 S.Ct. at 2138, 72 L.Ed.2d at 547. "The Mississippi Commission has jurisdiction to entertain claims analogous to those granted by PURPA * * *." FERC, 456 U.S. at 760, 102 S.Ct. at 2138, 72 L.Ed.2d at 547-48. FERC is distinguishable from the present case for the same reason that Testa is distinguishable: Illinois courts do not have jurisdiction to entertain state-law claims analogous to those that plaintiff asserts in this case, which are, essentially, "civil rights violations" within the meaning of section 8-111(C) (775 ILCS 5/8-111(C) (West 2000)).

E. Court of Claims
Section 8(d) of the Court of Claims Act provides that the Court of Claims has exclusive jurisdiction over "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against * * * the Board of Trustees of the University of Illinois." 705 ILCS 505/8(d) (West 2000). Plaintiff argues that "[n]either a private person nor [a] corporation is * * * subject to liability for [constitutional violations, [section] 1983 violations, or violations of Title VI" and, therefore, contrary to the trial court's conclusion, the Court of Claims would lack jurisdiction over those claims.
*666 It does not follow that the circuit court must necessarily have jurisdiction over claims over which the Court of Claims lacks jurisdiction. "[E]ven if the plaintiff had no remedy available in the Court of Claims, codification of public policy is for the legislature, and the lack of a remedy cannot grant jurisdiction to a circuit court over subject matter which is specifically barred by statute." Village of Riverwoods v. BG Ltd. Partnership, 276 Ill.App.3d 720, 728, 213 Ill.Dec. 240, 658 N.E.2d 1261, 1267 (1995).

III. CONCLUSION
For the foregoing reasons, we find that the jurisdiction of this cause is vested in the Commission. Accordingly, we affirm the trial court's judgment.
Affirmed.
KNECHT and McCULLOUGH, JJ., concur.