2025 IL App (2d) 240787
No. 2-24-0787
Opinion filed November 14, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SHAWN KOOISTRA, | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 24-MR-44 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| SYCAMORE POLICE PENSION FUND, | ) | Honorable |
| | ) | Bradley J. Waller, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1   In this administrative action, the circuit court of De Kalb County affirmed the decision of defendant, Board of Trustees of the Sycamore Police Pension Fund (Board), denying plaintiff, Shawn Kooistra, membership in the Sycamore Police Pension Fund. We also affirm the Board's decision.

¶ 2                                    I. BACKGROUND

¶ 3   Plaintiff was hired by the Roselle Police Department on March 4, 1997, and retired from that department in his final role as deputy chief of police on January 2, 2024. On January 3, 2024, he began receiving a retirement pension. On January 4, 2024, plaintiff was hired as a patrol officer

for the Sycamore Police Department and subsequently applied for membership in the Sycamore Police Pension Fund.

¶ 4    On January 18, 2024, the Board met to discuss, in part, plaintiff's application. The minutes from the meeting indicated that, prior to plaintiff being hired, Sycamore's chief of police informed plaintiff that the legal opinion of the attorneys for Sycamore's police pension fund was that plaintiff could participate in a defined contribution plan but was not eligible to participate in the pension fund. The Board had also been advised by an attorney that, pursuant to section 3-124.1(b) of the Illinois Pension Code (40 ILCS 5/3-124.1(b) (West 2022)), plaintiff could not participate in Sycamore's police pension fund. The Board ultimately denied plaintiff's application, finding that he could only participate in a defined contribution plan established by Sycamore.

¶ 5    Minutes from the Board's next regular meeting, held on April 18, 2024, indicate that the Board voted to adopt and publish its decision to deny plaintiff's application. Plaintiff was present at the meeting. The Board's published decision stated that the denial was based on its interpretation of section 3-124.1(b) of the Pension Code (*id.*). Under that section, the Board concluded that, because plaintiff was receiving pension payments from the Roselle Police Pension Fund and had reentered active service with the Sycamore Police Department after January 1, 2019, he could continue receiving his Roselle pension payments but was only eligible to participate in Sycamore's defined contribution plan—not its pension fund.

¶ 6    On May 6, 2024, plaintiff filed a one-count complaint for administrative review of the Board's decision. He alleged that the Board's denial of his application for membership in Sycamore's police pension fund was against the manifest weight of the evidence and based on an erroneous interpretation of the Pension Code. Plaintiff requested that the Board's decision be reversed and that he be admitted as a member into Sycamore's police pension fund.

¶ 7    On October 4, 2024, plaintiff filed a brief in support of his complaint for administrative review, raising three arguments. First, he asserted that the Board misinterpreted section 3-124.1(b) of the Pension Code, arguing that the provision applies only to officers who first joined the police force and became members of a pension fund after January 1, 2019. Since he first became a member of a pension fund when he was hired by the Roselle Police Department in 1994, he contended that section 3-124.1(b) did not apply to him.

¶ 8    Second, plaintiff argued that, if section 3-124.1(b) were applied as interpreted by the Board, it would violate the pension protection clause of the Illinois Constitution. See Ill. Const. 1970, art. XIII, § 5 (stating that "[m]embership in any pension or retirement system of the State *** shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired"). Plaintiff noted that under section 3-111(c) of the Pension Code (40 ILCS 5/3-111(c) (West 2022)), he was entitled to participate in two pension funds, and he argued that the legislature could not impair his eligibility for a second pension.

¶ 9    Finally, plaintiff asserted that the Board deprived him of his constitutional right to due process by denying his application for membership without conducting a hearing or affording him an opportunity to be heard. He claimed that, despite making a timely application and attending Board meetings in an attempt to be heard, he was not given the opportunity to testify, present evidence, cross-examine witnesses, or create a sufficient record.

¶ 10    In response, the Board argued that it properly interpreted the relevant statutory provisions and did not err in denying plaintiff's application. The Board further contended that section 3-111(c) of the Pension Code (*id.*) did not apply to plaintiff because it pertains only to officers who have service in two defined benefit plans at the time of retirement. The Board noted that plaintiff, at the time of his retirement, had earned a pension only from the Roselle Police Department. The Board

also argued that plaintiff did not have a legitimate claim to a second pension and, therefore, was not entitled to procedural due process in the Board's proceedings. Alternatively, it asserted that, even if due process were required, plaintiff was not deprived of it because both Board meetings were properly posted in compliance with the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2022)), and the public—including plaintiff—had the opportunity to attend and speak. The Board noted that plaintiff attended the April 2024 meeting, was given an opportunity to speak, but chose not to do so. In support, the Board attached a bystander's report from its attorney, who stated that he was present at the April 2024 meeting, that plaintiff was also present and given an opportunity to speak, but that plaintiff declined to say anything.

¶ 11     On December 3, 2024, the trial court held a hearing on plaintiff's complaint. Following argument, the trial court affirmed the Board's decision. The trial court found that, under the plain language of the relevant statute, because plaintiff first became a member of the Sycamore Police Department after January 1, 2019, and was already receiving a pension from the Roselle Police Department at that time, he was only eligible to participate in a defined contribution plan with the Sycamore Police Department. The trial court declined to address any constitutional issues, finding that they were forfeited because they were raised only in plaintiff's memorandum in support of the complaint, and not in the complaint itself. Nonetheless, the trial court noted that, because the Board's interpretation of section 3-124.1(b) of the Pension Code involved a question of law, an evidentiary hearing was neither mandated nor required. This timely appeal followed.

¶ 12                                II. ANALYSIS

¶ 13     On appeal, plaintiff argues that the Board erred in denying his application for membership in Sycamore's police pension fund. He further contends that the denial violates the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) and that he was denied

due process because he was not afforded a hearing or an opportunity to be heard before his application was denied.

¶ 14    In an administrative review case, the appellate court reviews the decision of the agency, not that of the trial court. *Lindemulder v. Board of Trustees of the Naperville Firefighters' Pension Fund*, 408 Ill. App. 3d 494, 500 (2011). The applicable standard of review depends on whether the question presented is factual, legal, or involves a mixture of fact and law. *Id.* If the administrative decision involves questions of fact, the manifest-weight-of-the-evidence standard applies; questions of law are subject to *de novo* review, and mixed questions of fact and law are reviewed under the "clearly erroneous" standard. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (*per curiam*). Here, our review is *de novo* because this case involves a question of statutory interpretation, which presents a question of law. *Land v. Board of Education of Chicago*, 202 Ill. 2d 414, 421 (2002).

¶ 15    In construing a statute, our task is to "ascertain and give effect to the intent of the legislature." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. The best indicator of the legislature's intent is the plain language of the statute. *Id.* In determining the plain meaning of statutory language, the court looks to the statute as a whole, the subject it addresses, and the apparent intent of the legislature. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "If the language of a statute is ambiguous, this court turns to extrinsic aids of statutory construction, including legislative history and well-established rules of construction." *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96

(2003). While an agency's determination does not bind us, we give substantial weight and deference to an agency's interpretation of a statute it enforces. *Village of Franklin Park v. Illinois State Labor Relations Board*, 265 Ill. App. 3d 997, 1001 (1994).

¶ 16    Section 3-124.1(b) of the Pension Code provides:

"§ 3-124.1. Re-entry into active service.

***

(b) If a police officer who first becomes a member on or after January 1, 2019 is receiving pension payments (other than as provided in Section 3-109.3) and re-enters active service with any municipality that has established a pension fund under this Article, that police officer may continue to receive pension payments while he or she is in active service, but shall only participate in a defined contribution plan established by the municipality pursuant to Section 3-109.4 and may not establish creditable service in the pension fund established by that municipality or have his or her pension recomputed." 40 ILCS 5/3-124.1(b) (West 2022).

Section 3-124.1(b) was enacted by Public Act 100-281 (eff. Aug. 24, 2017). As part of the same public act, the legislature also enacted section 3-109.4 (40 ILCS 5/3-109.4 (West 2022)), which required municipalities to establish a defined contribution plan, offered as an alternative to a police pension fund, that would aggregate police officer and employee contributions into individual accounts for retirement purposes.

¶ 17    In the present case, the phrase "a police officer who first becomes a member" is ambiguous, as it is susceptible to more than one reasonable interpretation. As plaintiff argues, the phrase could be read to mean that "first becomes a member" refers to a police officer's initial entry into any

police pension fund. Under that interpretation, the statute would not apply to him, because he first became a member of a police pension fund in 1997, when he began working for the Roselle Police Department—which was before the statutory cutoff date of January 1, 2019. The Board, by contrast, contends that "first becomes a member" refers to the officer's entry into a specific municipality's police department. In the Board's view, the statute applies to a retired officer who is collecting a pension and subsequently reenters active service in a different municipality after January 1, 2019. The Board asserts that this interpretation applies to plaintiff because, after retiring from the Roselle Police Department and beginning to collect a pension, he became a member of Sycamore's police department on January 4, 2024—after the statutory cutoff date of January 1, 2019.

¶ 18    We agree with the Board. The most logical interpretation of the statute is that it applies to a police officer who retires from one municipality, begins collecting a pension, and then reenters active service with a different municipality after January 1, 2019. Under this interpretation, the officer "first" becomes a member of the latter municipality's police department upon reentry into active service. In such circumstances, the officer may continue to receive pension payments but is not eligible to participate in the second municipality's pension fund. Instead, the officer may only participate in the second municipality's defined contribution plan, as established under section 3-109.4 (*id.*).

¶ 19    Our determination is supported by the legislative intent. In construing a statute, legislative intent may be discerned by examining the use of terms in other provisions of the same statute or in related statutes. *Christ Hospital & Medical Center v. Illinois Comprehensive Health Insurance Plan*, 295 Ill. App. 3d 956, 961 (1998). Here, the legislature used the term "member" to refer to a

member of a municipality's police department in other parts of the same statute. For example, section 3-111.5 states as follows:

> "A police officer who previously participated in the Illinois Municipal Retirement Fund (IMRF) for service as a member of the police department of a municipality and was transferred to that municipality's police pension fund upon its creation under this Article shall, for the purposes of determining the applicable tier of benefits under this Article, be deemed to have become a police officer and member of that municipality's police pension fund on the date that he or she first participated in IMRF as a member of the police department of that municipality, notwithstanding whether that start date was before January 1, 2011." 40 ILCS 5/3-111.5 (West 2022).

In this provision, the term "member" is used to refer both to a member of a municipality's police department and a member of a municipality's police pension fund. This usage indicates that "member" does not exclusively refer to someone enrolled in a pension fund but can also refer more broadly to a police officer serving in a municipal police department. See *id.* § 3-110 (defining "creditable service" as "the time served by a police officer as a member of a regularly constituted police force of a municipality"). Accordingly, the usage of the term "member" as used in other parts of the same statute supports the conclusion that the term, as used in section 3-124.1(b), can reasonably be interpreted to refer to a member of a municipality's police department.

¶ 20   Our interpretation is further supported by the legislative history. As previously noted, Public Act 100-281 (eff. Aug. 24, 2017), added both section 3-124.1(b), which is at issue here, and section 3-109.4, which directed municipalities to create a defined contribution plan. The act also amended section 3-109.1 (see 40 ILCS 5/3-109.1 (West 2022)), which applied to chiefs of police. Statements made during legislative debate reflect the legislature's intent to limit pension stacking:

"[T]his Bill amends the Downstate Police Article of the Illinois Pension Code. After January 1 of 2019, it would prohibit an annuitant from becoming a police chief and collecting a second pension in the IMRF SLEP program. It...but instead would allow them to participate in a defined contribution program." 100th Ill. Gen. Assem., House Proceedings, April 27, 2017, at 197 (statement of Representative Wehrli).

and

"House Bill 418 amends the Downstate Police Article of the Illinois Pension Code. It prohibits a police chief from receiving annuity retirement payments from a defined benefit plan while working as a police chief for a different municipality and participating in their defined benefit plan. It does allow a police chief to participate in a defined contribution plan created by their employer while receiving annuity retirement payments." 100th Ill. Gen. Assem., Senate Proceedings, May 29, 2017, at 78 (statement of Senator Connelly).

¶ 21    Additionally, the Legislative Synopsis and Digest summarizes House floor amendment No. 1 to House Bill 418 (100th Ill. Gen. Assem., House Bill 418, 2017 Sess.) as follows:

"Requires each municipality to establish a defined contribution plan for certain police officers. *** Provides that if a police officer is receiving pension payments and returns to active service with any municipality, he or she shall continue to receive those pension payments, but must participate only in the municipality's defined contribution plan." I Final Legislative Synopsis and Digest of the 100th Ill. Gen. Assem. (No. 13), at 2335.

The amendment was adopted. See 100th Ill. Gen. Assem., House Proceedings, April 26, 2017, at 156.

¶ 22    From the foregoing legislative history, it can be inferred that the purpose of Public Act 100-281 was to prevent police officers from reentering active service and simultaneously

collecting a pension while accruing additional credit toward a second pension under a defined benefit plan. In other words, the statute seeks to eliminate "double dipping" by requiring returning officers to participate in a defined contribution plan instead. This legislative goal is further supported by public commentary at the time. In an article on police pensions, Representative Wehrli is quoted as saying: " 'This process of double dipping...it's a problem that we need to address. Without pension reform[,] the fiscal crisis only gets worse.' " See Patrick Rehkamp and Pam Zekman, *No Retirement Parting - Chicago Cops Draw Pensions, Return to Payroll*, Ill. Answers Project (May 12, 2015), https://illinoisanswers.org/2015/05/12/no-retirement-parting-chicago-cops-draw-pensions-return-to-payroll/ [https://perma.cc/4E6J-QY7R].

¶ 23    Plaintiff's interpretation of the statute would defeat the legislature's goal of preventing multiple pensions and lead to an absurd result. See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 39 (courts should avoid interpretations that will lead to absurd, unreasonable, or unjust results and that would render statutes insignificant, meaningless, inoperative, or nugatory). If "member" referred to the date an officer first joins any pension fund, the statute would have no practical effect until many years later—only when that person becomes eligible to retire and draw a pension. See 40 ILCS 5/3-111 (West 2022) (generally providing that the pension is available to officers age 50 or older with at least 20 years of creditable service). For example, an officer who joined a pension fund in 2018 could retire from one municipality in 2038 and earn a second pension in another, directly undermining the statute's purpose. Statutes must be construed to avoid such absurd results. Thus, interpreting "first becomes a member" to refer to first becoming a member of a municipality's police department better aligns with legislative intent.

¶ 24    In so ruling, we note that plaintiff contends that the legislature has already taken steps to amend section 3-124.1(b) to eliminate any ambiguity related to the term "member." Plaintiff cites

House Bill 2484 (104th Ill. Gen. Assem., House Bill 2484, 2025 Sess.), currently pending in the legislature, asserting that it "strike[s] the reference to January 1, 2019[,] in its entirety and eliminates the inclusion of the ambiguous term 'member.' " However, plaintiff is mistaken; the amendments he refers to in his brief are proposed amendments to section 3-109.4(b), not section 3-124.1(b). In fact, as of now, the proposed amendment to section 3-124.1(b) in House Bill 2484 is as follows:

> "(b) If a police officer who first becomes a member on or after January 1, 2019 *but before the effective date of this amendatory Act of the 104th General Assembly* is receiving pension payments (other than as provided in Section 3-109.3) and re-enters active service with any municipality that has established a pension fund under this Article, that police officer may continue to receive pension payments while he or she is in active service, but shall only participate in a defined contribution plan established by the municipality pursuant to Section 3-109.4*, if the municipality has established such a defined contribution plan,* and may not establish creditable service in the pension fund established by that municipality or have his or her pension recomputed." *Id.* (new material in italics).

Accordingly, not only is plaintiff's argument based on an incorrect premise, but a review of the proposed amendment to section 3-124.1(b) offers no reason to reconsider our interpretation of the statute or its applicability to plaintiff.

¶ 25    Plaintiff's next contention on appeal is that interpreting section 3-124.1(b) to exclude him would violate the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). Specifically, plaintiff asserts that he became a member of a pension fund in 1997 and, thereafter, the legislature enacted section 3-111(c) of the Pension Code (40 ILCS 5/3-111(c) (West 2022)), which provides:

"(c) A police officer no longer in service who has at least one but less than 8 years of creditable service in a police pension fund but meets the requirements of this subsection (c) shall be eligible to receive a pension from that fund equal to 2.5% of the salary attached to the rank held on the last day of service under that fund or for one year prior to that last day, whichever is greater, for each year of creditable service in that fund. The pension shall begin no earlier than upon attainment of age 60 (or upon mandatory retirement from the fund by operation of law due to age, if that occurs before age 60) and in no event before the effective date of this amendatory Act of 1997.

In order to be eligible for a pension under this subsection (c), the police officer must have at least 8 years of creditable service in a second police pension fund under this Article and be receiving a pension under subsection (a) or (b) of this Section from that second fund. The police officer need not be in service on or after the effective date of this amendatory Act of 1997."

Plaintiff argues that under this provision, he became entitled to receive more than one pension and that the legislature cannot diminish or impair that right without violating the pension protection clause.

¶ 26 The pension protection clause provides that:

"[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

In other words, "members of pension plans *** have a legally enforceable right to receive the benefits they have been promised" and the "protections afforded to such benefits by article XIII,

section 5 attach once an individual first embarks upon employment in a position covered by a public retirement system, not when the employee ultimately retires." *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 46. Accordingly, once a person starts working and joins a public retirement system, any later changes to the Pension Code that would reduce the benefits tied to his or her membership cannot legally be applied to that person. *Id.*

¶ 27    In the present case, the enactment of section 3-124.1(b) did not diminish or impair any right of plaintiff. At the outset, section 3-111(c) appears to apply to officers who already have service in two defined benefit plans upon retirement. This includes those who served at least eight years with one department—insufficient to retire from that department—and then worked for another police department, ultimately retiring from the latter. Upon retirement, the officer seeks to obtain benefits for the earlier service. However, the issue in this case is not the interpretation of section 3-111(c). Assuming, *arguendo*, that it could apply to plaintiff's circumstances, one of the threshold requirements under section 3-111(c) for receiving an additional pension is that the officer must have "one but less than 8 years of creditable service in a police pension fund," while also having the same in another pension fund and be receiving a pension. 40 ILCS 5/3-111(c) (West 2022). However, under section 3-124.1(b), effective January 1, 2019, a police officer who retires and reenters service while receiving a pension is no longer eligible to participate in an additional pension fund. Here, plaintiff did not begin working for the Sycamore Police Department until 2024 and, therefore, was not eligible to participate in its pension fund. As a result, he never accrued creditable service in an additional pension fund, as required by section 3-111(c). As plaintiff never became a member of another police pension fund, he never acquired a right under section 3-111(c) that could have been diminished or impaired. Accordingly, there was no violation of the pension protection clause. *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 46 (one must first become

a member of a pension fund before the pension protection clause would preclude a reduction in benefits).

¶ 28    The cases plaintiff relies on are distinguishable because, in those cases, the individuals were already participating in a pension fund, and their rights as members of that fund were subsequently diminished or impaired. See, *e.g.*, *Williamson County Board of Commissioners v. Board of Trustees of the Illinois Municipal Retirement Fund*, 2020 IL 125330, ¶ 47 (amendment to Pension Code held unconstitutional where it changed the requirements for participation after plaintiffs had already been employed and were members of the fund); *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 47 (legislative changes that reduced retirement annuities to which "members *** became entitled when they joined those systems" violated the pension protection clause). In contrast, as explained, plaintiff's rights were not diminished or impaired because he was never eligible to participate in Sycamore's pension fund, never became a member of that fund, and never satisfied the requirements to obtain an additional pension under section 3-111(c).

¶ 29    Plaintiff's final contention on appeal is that he was deprived of due process when the Board denied his membership application without conducting a hearing or affording him an opportunity to be heard. This argument is also without merit. In making this determination, *Holmes v. Aurora Police Pension Fund Board of Trustees*, 217 Ill. App. 3d 338 (1991), is instructive. In *Holmes*, the plaintiff applied to participate in a police pension fund. In July 1985, the pension board denied the application by letter, which did not inform the plaintiff that, under the applicable statute, he had 35 days to appeal the decision (see Ill. Rev. Stat. 1987, ch. 110, ¶ 3-103 (now codified as 735 ILCS 5/3-103 (West 2024))). *Holmes*, 217 Ill. App. 3d at 340-41. Three years later, the plaintiff filed a complaint for administrative review of the denial. *Id.* at 342. The pension board moved to dismiss the complaint as untimely. In response, the plaintiff argued he was denied due process because the

July 1985 letter failed to inform him of the 35-day deadline. *Id.* The trial court denied the pension board's motion to dismiss, finding, in relevant part, that the 35-day time limit was tolled due to a lack of due process. *Id.* Following a hearing on the merits, the trial court ordered the pension board to admit the plaintiff into the pension fund. *Id.* at 343.

¶ 30    On appeal, the pension board argued that the trial court erred in denying its motion to dismiss. *Id.* This court agreed, holding that the complaint was untimely and should have been dismissed. *Id.* at 345. We further addressed whether the plaintiff had a property interest in the pension fund that would trigger procedural due process protections, and, if so, whether the July 1985 letter violated those rights by failing to inform the plaintiff of his appeal rights. *Id.* This court held that only applicants with *vested* benefits are entitled to notice of appeal rights under due process. *Id.* at 347. We concluded that the plaintiff did not have vested benefits or a property interest in the pension fund but had only "a mere expectancy that he would become a member." *Id.* Based on this reasoning, we vacated the trial court's decision. *Id.* at 349.

¶ 31    As in *Holmes*, plaintiff in this case did not have a property interest in the pension fund. As an applicant, he had only an expectation of membership. Accordingly, he was not entitled to procedural due process protections such as a hearing and the opportunity to be heard. *Id.* at 347; see *Nelson v. Board of Trustees of the Police Pension Fund of Springfield*, 141 Ill. App. 3d 411, 414-15 (1986) (holding that neither the Pension Code nor constitutional due process required the pension board to hold a hearing for an applicant, who had no protectible property interest but only "a unilateral expectation" of membership).

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County, which confirmed the Board's decision.

¶ 34    Affirmed.

***Kooistra v. Board of Trustees of the Sycamore Police Pension Fund*,**
**2025 IL App (2d) 240787**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 24-MR-44; the Hon. Bradley J. Waller, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas Mazur, of Marengo, for appellant. |
| **Attorneys for Appellee:** | Thomas S. Radja Jr., of Radja Collins Law, of Downers Grove, for appellees. |